THE FIRST UNIVERSALIST SOCIETY IN FLETCHER *v.* WILLIS D. LEACH AND OTHERS.

*Selectmen.   Division of Rents of Public Lands among the several Religious Societies of a Town.   Evidence.*

The selectmen of a town in making division among the different religious societies of the rents of lands granted to the use of the ministry, as provided by Sec. 5, Chap. 89 of the Compiled Statutes, (General Statutes Chap. 97, Sec. 5,) do not act in a *ministerial* but in a *judicial* capacity; and therefore are not liable for an erroneous division of such rents, provided in making it they act in good faith and with reasonable care and diligence, even though such error arose from improperly admitting or excluding evidence upon the matter in question.

Neither the schedule of members of a religious society, as furnished by its clerk, nor its records, are conclusive evidence on the matter of such division by the selectmen, as to who are its members.

When the selectmen have determined the amount of such rents to which a religious society is entitled, the proffer to the society of an order on the town treasurer for the money is a sufficient discharge of the remainder of their duty in the matter.

CASE against the defendants, for fraudulently and illegally withholding from the plaintiffs certain money to which the plaintiffs were entitled as their distributive share of the rents of lands in the town of Fletcher granted to the use of the ministry, and which it was the duty of the defendants, as selectmen of the town, to divide among the several religious societies therein in proportion to their several numbers, agreeably to section 5 of chapter 89 of the Compiled Statutes, (General Statutes, chapter 97, section 5.)   Plea, the general issue, and trial by jury at the September Term, 1861, ALDIS, J., presiding.

The evidence introduced by the plaintiffs tended to show that they were regularly organized, and had for many years acted, as a corporation for the support of the gospel, and that they had adopted by-laws in all respects agreeably to the provisions of chapter 85 of the Compiled Statutes, relating to such societies ; that on the 28th of February, 1859, there were two other organized religious societies in the town of Fletcher, viz., the

Methodist and the Baptist, and that each of these societies was entitled, with the plaintiffs, to a distributive share of the rents aforesaid ; that the mode of becoming members of the Universalist Society, as prescribed by the by-laws, was that those who desired to become members should subscribe their names to the constitution, and that no member could withdraw from said society without paying all his arrearages, and sending a written request to the clerk of the society to that effect ; that the clerks of those three societies had for a long time been accustomed to deposit in the town clerk's office, on or before the 28th of February in each year, a list of the names of the members of . their respective societies, and that the rents above named had always been distributed by the selectmen to such societies in proportion to the number of their members as shown by such list, and that no question as to the distribution had ever arisen before 1859 ; that on the 28th of February, 1859, the clerks of these three societies deposited a list of the members of each in the town clerk's office, from which it appeared that the Universalist Society contained seventy-two members, the Baptist Society forty-four members, and the Methodist Society forty-seven members ; that the defendants, who were the selectmen of Fletcher, in making the distribution in 1859 of the rents aforesaid struck off six names from the list of the members of the Universalist Society, and only allowed that society such a proportion of the rents as they would be entitled to for sixty-six members, which was one shilling for each member, and drew an order on the town treasurer in favor of the plaintiffs for the sum they would be entitled to upon such computation, which order the plaintiffs refused to receive on the ground that it was not for as large a sum as they were entitled to receive ; that the defendants in striking off these six names did not consult the clerk of the Universalist Society, or have any authority from him to do so, and that they professed to strike off these names, for the following reasons : in one case, because the person was not a resident of Fletcher or the vicinity ; in another, because the person sent them a written request to strike off his name, and in another, that of one Hurlburt, because one Scott had informed one of the defendants that Hurlburt wished to withdraw from the Univer-

salist Society, and in the other three cases because their names appeared also upon the list of members of the Methodist Society, as furnished by the clerk of that society on the 28th of February, 1859.

The evidence on the part of the plaintiffs also tended to show that all these six persons whose names were stricken off of the plaintiffs' list of members as aforesaid, were at the time members of the Universalist Society, in accordance with the by-laws thereof, while the testimony of the defendants tended to show the contrary, except in respect to Hurlburt, and that the defendants acted in good faith in striking off these six names, and in the belief that they were not members of the Universalist Society.

It further appeared that immediately after the plaintiff refused to receive the order on the town treasurer which the defendants had drawn for their share of such rents, as aforesaid, the defendants reconsidered the matter and came to the conclusion that Hurlburt should be treated as a member of the Universalist Society, and thereupon, rather than draw a new order, the defendants took a shilling in coin from their own pockets, and placed it with the town order, and offered them both to the treasurer of the Universalist Society, but he refused to receive them, whereupon the defendants left the order and the shilling with the town clerk to be delivered to the Universalist Society or their treasurer, whenever it should be called for. This shilling was the proper amount to be allowed the plaintiffs for adding Hurlburt's name to their list.

The court charged the jury, that, to enable the plaintiffs to recover, it was not necessary to show that the defendants intended to defraud the plaintiffs; that it was the duty of the defendants as selectmen of Fletcher, to make all reasonable inquiries and use reasonable diligence to ascertain who really were members of the Universalist, Methodist and Baptist Societies respectively, and what was the number of the members of each society, and the share of the funds which each of the societies was entitled to; to use their best judgment and act in good faith in so ascertaining the share of each society, and in dividing the funds; that if the selectmen so performed their duty in ascertaining the

share and dividing the fund between those societies, they would not be liable in this action to the plaintiffs, even.though they had by error or mistake distributed to the plaintiffs less than their just share of the fund; but if the selectmen were guilty of negligence in inquiring and ascertaining the respective numbers of the members of each society, if they did not make all reasonable inquiry and use reasonable diligence, and their best judgment in the matter, and the plaintiffs, owing to such negligence of the defendants, were deprived of any portion of the fund to which they were justly entitled, then the defendants were liable in this action, and the plaintiffs could recover.

The court further charged the jury that the lists furnished by the clerks of the societies to the town clerk, were to be used by the selectmen in ascertaining the number of members, but were not binding and conclusive upon the selectmen; that the selectmen might inquire of the persons whose names were on the list, or of other credible persons who would be likely to know, in regard to what society they belonged; that they might act upon their own knowledge and upon reasonable and credible information obtained from others.

The court further charged the jury, that although some of the persons whose names were struck off of the list of the Universalist Society, had not withdrawn from the Universalist Society, by *a written notice* according to the by-laws of that society—so that perhaps for some purposes they might, as between them and that society, still be members of it, still if they had practically and substantially withdrawn from that society, and had ceased to act and worship with them, and had joined the Methodist or Baptist church and society and acted and worshipped with them, the selectmen for the purpose of dividing this fund would have the right to treat them as not being members of the Universalist Society, but as members of the other society which they had joined.

The court further charged the jury that if the selectmen, after making their division and striking off Hurlburt's name, on the next day concluded to allow Hurlbut as a member of the Universalist Society, and thereupon immediately notified the Univer-

---

---

salist treasurer thereof, and offered him the order for the amount due upon the members allowed the previous day, and the shilling in coin for Hurlbut, and he thereupon refused it; and all this was done on the next day and within a reasonable time, so that the plaintiffs could have obtained all their share of the fund within a reasonable time after the time for its division, and before this suit was brought, and the defendants left the order and the shilling with the town clerk, subject to the plaintiffs' order, the jury finding that the order for $10.98, and the shilling, was the plaintiffs' full share of the fund, then the defendants would not be liable to the plaintiffs in this action; that it was not necessary to tender to the plaintiffs gold or silver to the amount of their share of the fund; that if the selectmen offered the plaintiffs the full amount of their share, partly in an order on the town treasurer in the usual manner, and the balance of one shilling in legal coin, such offer or tender was all that in that respect they were required to do, and was a proper performance of their duty in this respect.

To the charge as above delivered the plaintiffs excepted.

*H. S. Royce* and *J. S. Burt*, for the plaintiffs.

*W. C. Wilson* and *H. R. Beardsley*, for the defendants.

BARRETT, J. The plaintiffs seem to base their claim to charge the defendants with liability in this case upon the assumption, that their duty, in respect to the distribution of the money in question, was purely *ministerial*—in no part involving the exercise of judgment or discretion, as to the numbers of which the respective religious societies were composed at the time of the distribution to be made. The view, taken by the counsel for the plaintiffs, involves the idea, that the list of members, furnished by each society, is to be the basis of the distribution to be made, without any question, or inquiry to be made by the selectmen, as to the truthfulness of the lists, or the genuineness and *bona fides* of the membership thus represented. If this should be regarded as the correct view to be taken of the

subject it would seem difficult to avoid the result which the plaintiffs claim in this suit.

But we find difficulty in adopting this view.

It is to be remembered, that the statute, upon which the duties of the selectmen arise, in respect to this subject, does not prescribe, or intimate, what shall be the criterion, by which to determine the number of members of the respective societies, entitled to participate in the fund. It is true, that, in another chapter, provision is made for the corporate organization of such societies, in virtue of which, when duly organized, they may become possessed of certain powers, rights and privileges, both in reference to their members individually, and in reference to persons and parties outside of the corporation.

But we know of no provision of statute, nor of any principle or rule of common law, by which, as to outside parties, against whom the society claims rights as a corporation, or aggregated association, depending on the number of its members, their records, and much less a copy of their schedule of members, is to be regarded as conclusive, and to constitute the unquestionable basis and measure of their right.

We think that, while in cases like this, such records or schedule are a proper mode and means of exhibiting the ground and measure of their claim, and entitled to be regarded by the selectmen as an important species of evidence of the number of the real members of the society, still they do not preclude further enquiry by them on this subject, nor shut out from their consideration other evidence, bearing on the question of the number of members actually, and in good faith, belonging to the society.

If this be so, (and of it we have no doubt,) the position of the selectmen, in making the distribution of the fund in question, involves necessarily functions of a *judicial* character, so far as determining the number of members, really, and in good faith, belonging to the respective societies, that may be claiming to share in the fund, is concerned.

In exercising such judicial functions in a given case, it would obviously be the duty of the selectmen to act in good faith, and with reasonable diligence. When they should have done so, and in that

way determined, for the basis of the distribution, the number of the members of the several societies, there is no warrant of law or reason, for holding them liable for any error they might have committed in this respect, either on account of giving consideration to facts and circumstances that are not proper as evidence, or of disregarding facts and circumstances that are proper as evidence, and entitled to consideration and weight.

No one controverts this principle, though there is often some doubt, and difficulty, and diversity of opinion, as to its application, in particular cases. *Davis* v. *Strong*, 31 Vt. 332, is a clear assertion of the principle, and an illustration of the remark just made. It also is very much in point as an authority, by analogy, for the application we make of the principle in this case.

The county court seems to have acted upon this view, in the trial of the case, and in the charge to the jury. And we are unable to see that the court failed to give to the plaintiffs every advantage that the law entitled them to, upon the evidence, in reference to this branch of the case.

But it is claimed that the selectmen failed of their duty, in proffering an order on the treasurer of the town.

It is clear that after the number of the members has been determined, the further duty of the selectmen is essentially *ministerial.*

The question is, whether, in the distribution of the money, it was proper for them, in the discharge of their duty, to proffer an order on the town treasurer.

They are authorized to lease the lands, reserving rents, "which shall be annually paid into the treasury of the town."

The 5th section of the chapter on this subject, then provides, that these rents "shall be appropriated, under the direction of the selectmen to the organized religious societies in each town;" * * * "if there shall be more than one such society in any town, the same shall be divided between them in proportion to their several numbers."

It would seem, then, that the selectmen are not the deposita-

ries, or custodians, of the rents, any more than of any other of the monies of the town. They are to be paid into, and kept by the treasurer of the town.

The 5th section does not charge the selectmen with any duty of manual control, and division, and payment, of the money; but only with a *direction* of the appropriation of the money.

It would seem, then, that, when they had determined · the amount to which each, or any given society, was entitled, and had announced it to the party entitled, by giving him an order on the treasury for the amount, they would have done not only all that could be required of them, but all that they had any authority to do.

As to the shilling, due on the score of Hurlburt, we think, upon the evidence, the court put the case properly to the jury; and inasmuch as the selectmen proposed to advance the money from their own pockets in coin, the plaintiffs have no cause for complaining that they did not draw a new order for the full amount to which they were entitled.

On the whole we are quite clear that the judgment should be affirmed.