STATE *v.* GEORGE T. HOWARD.

October Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed November 12, 1909.

*Officers—Duties—"Ministerial Duty"—Discretionary Duty— Review of Ministerial Acts—State Auditor—Duties—Discretionary Acts—Review—Allowance of Claims—Conclusiveness—Good Faith—Fraudulent Misrepresentations— State Officers—Time Spent in Travelling—Livery Hire— Improper Presentation of Claims—Allowance—Fictitious Vouchers—Evidence—Question for Jury—Motion for Verdict—Review—Exceptions—Recital—Effect.*

A "ministerial duty" is one regarding which nothing is left to discretion,—a simple and definite duty imposed by law, and arising under

conditions admitted or proved to exist. If it is one that requires the exercise of judgment in its performance, it is not ministerial, but discretionary.

A discretionary duty may be executive or judicial, according to the nature of its subject-matter.

The ministerial acts of a public officer are subject to judicial review, but the contrary is true of the acts of an officer entrusted with the exercise of judgment and discretion.

A public officer's decision which rests solely on the construction of a statute does not involve that exercise of judgment which exempts from judicial review.

If a public officer's duty necessarily involves an inquiry of fact and an exercise of judgment on a case presented, though such inquiry be informal or based on his own knowledge, his action is not ministerial, but discretionary, and is therefore conclusive.

The ascertainment by a public officer of a fact which raises a duty, or is collateral to its performance, is not such an exercise of judgment as will deprive the duty of its ministerial character.

If an officer's prescribed duty is definite and precise, the fact that he is permitted a choice of methods or instrumentalities in its discharge will not control its status as ministerial or discretionary.

While a private person will be bound by an act of his agent within the scope of the latter's apparent authority, although contrary to specific instructions of which the other contracting party is ignorant, it is otherwise in respect of an agent contracting for the public, for his powers are defined by law of which every one must take notice.

Generally, the discretionary acts of the state auditor within his jurisdiction are as conclusive as the judgments of a court, for the rule against collateral attacks of judicial decisions applies to the decisions of officers who act judicially, though not sitting as judicial tribunals.

The state auditor may err in the construction of a statute without invalidating his decision, if the claim presented is one requiring the consideration of a statute in connection with an inquiry of fact, but courts are not bound by his interpretation of statutes defining his powers.

Where the jurisdiction of the state auditor depends on the existence of certain facts that are found by him from evidence tending to

establish them, his jurisdiction is complete, and his determination of the matter will, generally, be conclusive.

One who wrongfully has obtained money from the state treasury cannot stand on the conclusiveness of the state auditor's allowance, as the State will not be bound by an allowance procured by fraud, or due to the auditor's misapprehension that resulted from a misleading statement of the claimant, though not fraudulent.

The state auditor's allowance of a claim cannot be corrected in a collateral proceeding for mere errors of accounting, unless they were induced by the claimant's fraud or misstatement.

The state auditor's allowance of a claim will not bind the State unless made in good faith.

The state auditor's duty is not performed by merely exacting that claims be itemized, sworn to, and supported by vouchers as required by the statute, but he must scrutinize the account in the light of his general information regarding the conditions that bear on the justness of the charges, and if he has reason to question a duly verified claim, and has no knowledge that can serve as a test of its correctness, he should make a special inquiry.

Where the state auditor, in good faith, allows a claim on information fairly tending to establish it, whether already in his possession or obtained by present inquiry, his decision will be conclusive.

An allowance by the state auditor which might have been impeached collaterally may be made conclusive by payment, under the general rule that if, with full knowledge of the facts, one voluntarily pays money that he is under no legal obligation to pay, he cannot recover it.

Under the statute allowing a railroad commissioner his necessary expenses when away from home and a fixed sum per day for his services, time necessarily spent in going to and from the place of an appointment was time spent in the service of the State, and the question of necessity depends on the facts, which the state auditor is empowered to determine.

Whether the facts and circumstances justified a railroad commissioner's claim for designated travelling expenses was a matter for the determination of the state auditor in the proper exercise of his discretion, and his decision is conclusive.

Receipted bills for alleged livery hire, filed with the state auditor by a railroad commissioner as expense vouchers, but which represented

only charges for the use of his own team, were fictitious and should not have been treated as vouchers.

The improper presentation of an account against the State does not prevent the state auditor from making a valid allowance thereof where all the facts are known to him.

The law does not preclude the allowance of a reasonable compensation to a railroad commissioner for the necessary use of his own team in the performance of his official duties, and the statutory requirement of vouchers for official expenses does not apply to such case.

In assumpsit by the State to recover money claimed to have been illegally paid for an officer's services and expenses, the state auditor was properly required to state whether he undertook to ascertain whether defendant had performed the services, and the extent of such effort.

In a suit by the State to recover money claimed to have been wrongfully paid, where the bill of exceptions alleges that "there was no misstatement, misrepresentation, concealment, or suppression by defendant of any facts connected with the several items" unless the facts therein afterwards stated tended to show otherwise, and refers to the reporter's transcript of the testimony and to the exhibits on defendant's motion for a verdict and on his motion to set aside the verdict, the quoted statement will be given effect according to its terms, in the absence of a provision that the transcript shall be controlling.

It was for the state auditor to say whether a railroad commissioner's absence from home over Sunday was necessary and whether his stopping over night so as to travel by day trains was justifiable, and hence the allowance by the auditor of the commissioner's hotel bill in a town other than that of his appointment, and at no greater expense to the State, was not void for want of jurisdiction.

In assumpsit by the State to recover money claimed to have been wrongfully paid to a railroad commissioner for services and expenses evidence *held* to indicate that items for a day's service at Montpelier, and expenses, during the Republican convention there, were for services never rendered, and for expenses never incurred in behalf of, the State, and so were properly submitted to the jury.

Where an item in a railroad commissioner's account for personal expenses, presented to the state auditor for allowance, included

expense for board of the commissioner's wife on an occasion when
he claimed it was necessary that she accompany him to care for
his inflamed eye, but the account did not indicate, nor did he in-
form the auditor, that any part of the charge was for the wife's
board, the account was such a misrepresentation, as, regardless
of any fraudulent intent, made void the auditor's allowance of
the item.

GENERAL ASSUMPSIT. Plea, the general issue with notice,
and four special pleas, each relying on the allegations that each
item in question had been fully and fairly presented to the
auditor of accounts, by whom they were duly allowed, and that
they were later paid by the state treasurer. Trial by jury at
the September Term, 1907, Orleans County, *Miles,* J., presiding.
Verdict and judgment for the plaintiff. Each party excepted.
The opinion states the case.

*Clark C. Fitts,* Attorney General and *E. A. Cook,* State's
Attorney for the plaintiff.

The auditor is not a judicial officer, but a mere agent of the
State. *Gavimon* v. *Insurance Co.,* 79 Mo. 225; *Sears* v. *Stone
Co.,* 105 Mo. 236. An agency conferred by statute and growing
out of it must be ascertained from the statute. Persons dealing
with an officer of the State are presumed to know his authority.
*State* v. *Bank,* 45 Mo. 528; *Backman* v. *Charlestown,* 42 N. H.
125; *Baltimore* v. *Reynolds,* 20 Md. 1, 83 Am. Dec. 535; *Barton*
v. *Swepston,* 44 Ark. 437; *Bowe* v. *U. S.,* 42 Fed. 761; *Wash-
ington County* v. *Parlier,* 5 Gilman 232; *State* v. *Roberts,* 62
Miss. 388; *Cumberland County* v. *Edwards,* 76 Ill. 544; *Com-
missioners* v. *Keller,* 6 Kan. 510; *Grant Co.* v. *Sels,* 5 Ore. 243;
*People* v. *Supervisors,* 11 Cal. 170; *Wall* v. *Monroe County,* 103
U. S. 74; *Long* v. *McDowell,* 107 Ky. 14; *Worth* v. *Stewart,*
122 N. C. 258; *Com.* v. *Bank,* 10 Pa. St. 442; *Heahnlen* v. *Com.,*
13 Pa. St. 617.

Where acts are not within the scope of an officer's authority,
they are not official acts and the State is not bound thereby.
26 Am. & Eng. Enc. of Law, 479; *People* v. *Roberts,* 163 N. Y.
70; *People* v. *Brandeth,* 36 N. Y. 190; *Delafield* v. *Ill.,* 26 Wend.
192.

*Dunnett & Slack, Young & Young* and *W. B. C. Stickney*
for the defendant.

The determination by the auditor, unappealed from, was
in the nature of a judgment and was conclusive of the rights
of the parties, and cannot be reviewed in this action.
*Supervisors* v. *Briggs*, 2 Denio 26; *Supervisors* v. *Ellis*, 56
N. Y. 620; *Osterhoudt* v. *Rigney*, 98 N. Y. 223; *People* v. *Board*,
52 N. Y. 224; *State* v. *Hastings*, 16 Wis. 518; *Sioux Co.* v.
*Jameson*, 43 Neb. 265; *Heald* v. *Polk County*, 46 Neb. 28;
*Snelson* v. *State*, 16 Ind. 29; *Commissioners* v. *Gregory*, 42 Ind.
32; *Klein* v. *Supervisors*, 54 Mo. 254; *Carroll* v. *Board of Police*,
28 Mo. 38; *Arthur* v. *Aclam & Speed*, 49 Mo. 404; *Colusa
County* v. *DeJarnett*, 55 Cal. 373.; *Placer Co.* v. *Campbell*, 11
Pac. 602; *County of Almeda* v. *Evers*, 136. Cal. 132; *People* v.
*Miller*, 91 N. Y. 639; *Jennings* v. *Abbeville County*, 24 So. Car.
543; *Richland* v. *Miller*, 16 So. Car. 236.

The auditor allowed each item with full knowledge of its
nature and justness, or, at least, with means of obtaining such
knowledge. No principle of law is better established than that
money paid in such circumstances cannot be recovered. *Badeau*
v. *United States*, 130 U. S. 439; *Vindicator Printing Company*
v. *State*, 67 N. E. 733; *Painter* v. *Polk County*, 81 Iowa 242;
*Cincinnati* v. *Cincinnati Gas Light & Coke Company*, 53 Ohio
St. 278; *Ottawa County* v. *County Auditor*, 7 Ohio 400; *Bris-
bane* v. *Dacres*, 5 Taunt. 144; *Bilbie* v. *Lumney*, 2 East. 469;
*Shotwell* v. *Murray*, 1 John. Ch. 512; *Marcott* v. *Hampton*, 2
Smith's Lead. Cases 458.

MUNSON, J. The State prosecutes this suit to recover sums
claimed to have been illegally charged by the defendant for his
services and expenses as railroad commissioner. The case is
here upon exceptions taken by both parties. The question pre-
sented is regarding the effect of an allowance of the charges
by the auditor of accounts. The defendant claims that a de-
termination of the auditor is in the nature of a judgment, and
conclusive of the rights of the parties. The State argues that
the auditor is not a judicial officer, but merely an agent with
limited powers, whose unauthorized act has no binding effect.

The statute provides, with certain exceptions, that the
treasurer shall not disburse moneys except upon orders drawn

by the auditor in pursuance of law; that the auditor shall examine and adjust all claims against the State, not otherwise specially provided for, in favor of persons acting under the authority of the State or of the executive, and allow such sums as he finds justly due, and draw orders on the treasurer therefor; that claimants for compensation shall furnish him, before payment is made, sworn itemized statements of the time spent, the date thereof, the services performed and items of expense incurred, accompanied by receipted bills as vouchers for all expenses other than certain minor ones specified; that he may examine a claimant or other person under oath, and shall require proof of a claim equivalent to testimony upon oath, or a certificate of some commissioned officer of the State who is officially cognizant of the claim; that he shall allow no claim not based on law, nor draw an order except in pursuance of law; that he shall make a record of claims presented, and shall at the request of the claimant, upon the disallowance of a claim in whole or in part, refer such claim to the General Assembly, and that if the claimant neglects to apply to the General Assembly, or the General Assembly acts upon the claim by allowing it in whole or in part or rejecting it, the claim shall be treated as adjudicated; that he shall make a biennial report of the revenues and disbursements of each fiscal year, showing by what officer and on what account they were received or made, and that the claims committee of the General Assembly shall examine this report in order to correct allowances which appear excessive, and shall examine his record of claims presented and his proceedings thereon, and make report to the General Assembly. V. S. 273, 306, Acts 1896, No. 123, §6, Acts 1904, No. 171, V. S. 307, 327, 308, 318, 320; (P. S. 380, 414, 412, 416, 435, 417, 428, 430).

The only cases in this State to which our attention has been directed as helpful in the interpretation of these provisions are *State* v. *Bates,* 36 Vt. 387, 398; *Peck* v. *Powell,* 62 Vt. 296, 19 Atl. 227; *Fay* v. *Barber,* 72 Vt. 55, 47 Atl. 180; *Clement* v. *Graham,* 78 Vt. 290, 319, 63 Atl. 146. The first of these was a suit on the bond of a defaulting state treasurer; and the sureties pleaded in bar that on the annual settlements made with the treasurer by the auditor for the two preceding years it was found and officially reported by the auditor that the treasurer

had fully accounted for all the moneys he had received, and that they signed the bond sued upon in reliance upon the correctness of said reports; and the Court held the plea defective in that it did not set up any want of good faith or of due care on the part of the auditor in making the settlements. In *Peck* v. *Powell* the petitioner, as judge of the city court of Burlington, claimed certain fees which the petitionee, as auditor, refused to allow him, on the ground that he was not within the terms of the statute; and the Court held the auditor's construction of the statute erroneous, and ordered that a mandamus issue. *Fay* v. *Barber* was a case of the same nature, relating to the fees which justices of the peace were entitled to receive under various provisions of the criminal law. In *Clement* v. *Graham* the Court recognized the office of auditor of accounts as a branch of the executive department of the State government. The most that the State can claim from the three cases last named is that the auditor is an executive officer, and that his action upon claims of a certain class, different from any in question here, may be reviewed on petition for mandamus. It is claimed that *State* v. *Bates* holds in effect that a finding of the auditor within the scope of his official duty is not a judicial determination. The real scope of the decision is that an auditor's report that the state treasurer has accounted for all his receipts, based upon an examination of his accounts made in good faith and without negligence, affords no defence to one who becomes his surety for a subsequent term in reliance upon the fact that his previous official conduct has been thus passed upon. It is evident from this brief review that the statutory provisions in question must be construed without much aid from our previous decisions.

The provision that the legislative committee on claims shall examine the auditor's report in order to correct allowances which appear excessive, is referred to by the State as a plain indication that the findings of the auditor are not to be regarded as final. On the other hand, the provision that a claim referred to the General Assembly at the request of a dissatisfied claimant shall be treated as "adjudicated" if the claimant neglects to apply to the General Assembly, is referred to by the defendant as showing beyond question that the decisions of the auditor have the conclusiveness of a judgment. While arguments worthy of consideration may be based upon these and other particular

provisions and expressions of the statute, it is evident that our disposition of the questions presented must rest largely upon a comprehensive view of the statute as a whole and the general principles applicable to the subject.

The designation of the auditor as an executive officer does not carry us far on our inquiry. The duties of the head of an executive department are seldom confined to those properly classed as executive. The conflict of argument on this subject is apparently due in part to a failure to recognize the fact that the authorized acts of an auditing officer may differ in character and be subject to different rules. His statutory duty in the particular instance may be ministerial or discretionary, and the effect to be given his action will depend upon its classification in this respect. A ministerial duty is one regarding which nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist. *Mississippi* v. *Johnson,* 4 Wall. 475, 18 L. Ed. 437. If the duty is one that requires the exercise of judgment in its performance it is not ministerial but discretionary. A discretionary duty may be executive or judicial, according to the nature of the subject-matter. The ministerial acts of a public official, whatever the classification of his office, are subject to the control and review of a court of competent jurisdiction. But an officer who is intrusted with a duty which requires the exercise of his judgment and discretion is entitled to proceed therein without judicial interference, and may render a decision that will be final and conclusive.

The distinction drawn by the definition above given may be made more specific by a reference to some of the cases. A decision which rests solely upon the construction of a statute does not involve that exercise of judgment which the law contemplates,—as may be seen from the *Peck* and *Fay* cases already cited. See also the remarks of Chief Justice Taney in *Decatur* v. *Paulding,* 14 Peters 497, 10 L. Ed. 559. If the duty is one that necessarily involves an inquiry of fact and an exercise of judgment upon the case presented it is not ministerial, and the disposition made of it will be binding upon the courts. *Decatur* v. *Paulding; United States* v. *Seaman,* 17 How. 225, 15 L. Ed. 226; *Wailes* v. *Smith,* 76 Md. 469, 25 Atl. 922; *Henkel* v. *Willard,* 97 Md. 24, 54 Atl. 657. The inquiry of fact referred to need

not necessarily be a formal inquiry in the particular instance, if the official is already possessed of information upon the subject; for he may act upon his own knowledge as well as upon information derived from others. See *United States* v. *Barlow,* 132 U. S. 271, 33 L. Ed. 346, 10 Sup. Ct. 77. The ascertainment of a fact which raises the duty, or is collateral to its performance, is not such an exercise of judgment as will deprive the duty of its ministerial character. *Betts* v. *Dimon,* 3 Conn. 107; *Grider* v. *Tally,* 77 Ala. 422, 54 Am. Rep. 65. If the duty imposed is itself definite and precise, the fact that the official is permitted a choice of methods or instrumentalities in discharging it will not control the classification. *McCord* v. *High,* 24 Iowa 336; *Hicks* v. *Dorn,* 42 N. Y. 47.

Most of the cases cited in support of the above rules were cases in which it was sought to control the action of an official by mandamus or injunction. Others were cases in which it was sought to hold an official liable in damages for action taken. To the first class may be added *Richards* v. *Wheeler,* 2 Aik. 369, a case in which this Court considered the grounds and extent of its right to control the action of an inferior tribunal. Cases of the second class in this State are *Fuller* v. *Gould,* 20 Vt. 643; *Stearns* v. *Miller,* 25 Vt. 20; *Davis* v. *Strong,* 31 Vt. 332; *Universalist Soc.* v. *Leach,* 35 Vt. 108. Both classes of cases are directly applicable to our inquiry, for in both of them the distinction between ministerial and discretionary power is the primary test of the plaintiff's right to the remedy.

Another class of cases within the scope of our inquiry consists of those which involve the rights and liabilities of the government or a municipality under contracts entered into by its officials or special agents. The main pertinency of these cases lies in the fact that the government or municipality will not be bound by an undertaking of its agent in excess of his authority where an ordinary principal would be. A private individual will be bound by an act of his agent which is within the scope of his apparent authority, although contrary to specific instructions not known to the other contracting party. This rule is deemed to have no application to an agent contracting for the public, for his powers are defined and limited by public law, of which every one must take notice. Among the cases cited by the attorney general are several of this class.

The briefs before us are based largely upon the decisions of various states regarding the nature and effect of allowances made by the auditing boards of counties and other governmental agencies. It would seem from the note to *Commissioners* v. *Heaston*, 55 Am. St. Rep. 203, in which these cases are reviewed, that the states are about equally divided upon this subject. The theory of some courts is that the auditing board is merely an administrative agent, which sustains such a relation to its principal that it cannot properly be regarded as acting judicially, and that its allowance is only *prima facie* evidence of the correctness of the claim, and not a determination binding upon the municipality. The theory of other courts is that the allowance of claims not definitely fixed by statute is not a mere ministerial duty, but one that involves an exercise of judgment and discretion, and that consequently the action taken will be final and conclusive. The first view is put partly upon the ground that the statute making provision for the presentation and allowance or rejection of claims is designed to give the municipality an opportunity to examine and act upon the claims without being harrassed by suits. This reasoning can have no application to the decisions of an auditor who is a branch of the executive department of the State, for the State cannot be sued without its consent.

We have seen that in the *Peck* and *Fay* cases the Court directed the auditor to pay certain fees that he had disallowed,— which amounted to a holding that the auditor's action therein was not discretionary. It is obvious that if the fees had been allowed and paid over, and the State had sued for their recovery, a further question would have been presented. The present suit is of the latter class, and the defendant claims that even if the allowance was open to impeachment the State is concluded by the payment. So the points to be taken up in proceeding with our inquiry must be viewed with reference to their bearing on both or either of two questions—the conclusiveness of the allowance and the effect of the payment.

Generally speaking, the discretionary acts of an auditor, if within his jurisdiction, are as binding as the judgments of a court; for the rule against a collateral impeachment of judicial decisions applies to officers who act judicially, although not sitting as a judicial tribunal. 23 Cyc. 1062; *Board of Police* v. *Grant,* 9 S. & M. 77, 47 Am. Dec. 102; *Waugh* v. *Chauncey,* 13

Cal. 11. But the powers of an auditor are determined by statutory provisions, and the State will not be bound if he exceeds the powers conferred. It is clear that if the auditor acts without warrant of law his action will be of no effect. But he may act erroneously without exceeding his authority. He may err in the construction of a statute without invalidating his decision, if the matter is one that requires a consideration of the statute in connection with an inquiry of fact. But the courts will not hold themselves bound by the interpretation which an officer puts upon the statutes defining his powers. 23 Ency. Law 37; *State v. Hastings,* 10 Wis. 518. If the matter is one in which the jurisdiction of the auditor depends upon the existence of a certain state of facts, and those facts are found by the auditor from evidence which tends to establish them, the jurisdiction is complete, and his disposition of the matter will be conclusive,—unless deprived of its conclusive effect by matters which remain to be considered. 23 Cyc. 1088; *Agry* v. *Betts,* 12 Me. 415; *Ricketts v. Spraker,* 77 Ind. 371.

The primary purpose of the auditor's office is to safeguard the funds of the State. To facilitate the liquidation of just claims, the Legislature has provided for their adjustment and payment through the instrumentality of the auditor, under the regulations above set forth. These general considerations certainly support the claim that one who has obtained money from the treasury wrongfully cannot stand upon the conclusiveness of the allowance. The State will not be bound by an allowance of the auditor procured by fraud. See *Fenemore* v. *United States,* 3 Dall. 357, 1 L. Ed. 634; *Moses* v. *United States,* 166 U. S. 571, 41 L. Ed. 1119. Nor will it be bound by an allowance due to a misapprehension of the auditor which resulted from a misleading statement of the claimant not fraudulently made. See *United States* v. *Sanborn,* 135 U. S. 271, 34 L. Ed. 112, 10 Sup. Ct. 812. The further holding of the United States Court, that the government will not be bound by an allowance based on a mistaken belief in the existence of a specific fact so material that the allowance would not have been made but for such belief, is based on a statute. *United States* v. *Barlow,* 132 U. S. 271, 33 L. Ed. 346, 10 Sup. Ct. 77. But mere errors of accounting cannot be corrected in a collateral proceeding, unless they were induced by the fraud or misstatement of the claimant. If this

2

were otherwise, the auditor would be but the lowest of a series of tribunals in which the legitimate accounts of a claimant could be examined and reexamined at the option of the State,—a view entirely inconsistent with the legislative scheme of adjustment.

But, although the duty committed to the auditor is one that involves the exercise of a judicial function within certain limits, he is nevertheless an administrative agent of the State; and the law does not accredit him to claimants as one whose authority will give finality to an allowance made in disregard of the obligations of his trust. The auditor's allowance of a claim will not be binding on the State unless made in good faith. If he acts in obedience to a corrupt motive his disposition of the matter may be questioned collaterally. Nor will his action be conclusive if he proceeds in disregard of the fundamental requirements of the duty to be performed. The designation and nature of his duty imply that his decision shall be based upon some information regarding the claim presented. See *United States* v. *Barlow,* 132 U. S. 271, 280, 33 L. Ed. 346, 10 Sup. Ct. 77. Our statute requires that a claim shall be itemized, and sworn to, and supported by certain vouchers; and this secures the submission of some evidence in connection with each claim. But the auditor's duty is not confined to seeing that these requirements are complied with. He must scrutinize the account in the light of his general information regarding the conditions which bear upon the justness of the charges. If he has reason to question a duly verified claim, and has no knowledge that can serve as a test of its correctness, he should proceed upon such specific inquiry as may be practicable. But if he allows the claim upon information which tends fairly to establish it, whether already in his possession or obtained by present inquiry, and acts in good faith in so doing, his disposition of the matter will be conclusive; for he is the' judge of the sufficiency of the information upon which he acts, and is not confined to judicial methods of inquiry.

An allowance that might have been impeached collaterally may be made conclusive by payment. It is a general rule that if one voluntarily pays, with full knowledge of the facts, money which he is under no legal obligation to pay, he cannot recover it back. See *Taggart* v. *Rice,* 37 Vt. 47. The application of this doctrine to payments made by public officials is not very clearly determined. It is held in some important jurisdictions that

the rule has no application to payments unlawfully made by the officials of a State or municipality. *Village of Fort Edward* v. *Fish,* 156 N. Y. 363, 50 N. E. 973; *Allegheny County* v. *Grier,* 179 Pa. St. 639, 39 Atl. 353; *Com.* v. *Field,* 84 Va. 26, 3 S. E. 882; *Wayne County* v. *Reynolds,* 126 Mich. 231, 85 N. W. 574, 86 Am. St. Rep. 541. It is said that such a payment is not voluntarily made by the State or municipality, but is made by its agent in excess of his authority. In some of these cases all allowances held unauthorized by the statute are apparently treated as if void for want of jurisdiction. But in *Wayne County* v. *Reynolds,* the court said it did not lose sight of the substantial difference between the case of money paid by such an officer as a treasurer in the routine of his office, and money paid upon warrant after allowance by a board authorized to make a final adjustment of claims.

It was said in *McKnight* v. *United States,* 98 U. S. 179, 25 L. Ed. 115, in denying the right of the United States to recover a certain unauthorized payment, that the rules of law applicable to individuals are applicable to the government. In *McElrath* v. *United States,* 102 U. S. 426, 26 L. Ed. 189, the attorney general contended that the right of the government to reclaim money paid out of the treasury under a mere mistake of law was not subject to the limitations which would be applied between individuals, and argued further that whether the mistake was one of fact or of law or of both, the government could always recover from third persons money improperly paid out of the public treasury by its accounting officers, when not in pursuance of previous judicial determination. The court did not inquire as to the correctness of these claims, and placed its decision in favor of the government upon another ground. *Badeau* v. *United States,* 130 U. S. 439, 32 L. Ed. 997, 9 Sup. Ct. 579, involved the right of a retired army officer in the consular service to retain pay received in the former capacity under a mistaken construction of the statute, while he was receiving compensation as consul. It was claimed in argument, on the authority of *McElrath* v. *United States* and other cases, that the government was not bound by the mistakes of its officers, whether of law or of fact, but the court went no further than to say that inasmuch as the claimant, if not an officer *de jure,* acted as an officer *de facto,* it was not inclined to hold that he had received money which, *ex æquo et*

*bono,* he ought to return. Here services were rendered the government in the capacity and throughout the time for which the unauthorized payment was made. This distinguishes the case from those where payment was made for services not rendered. The *McElrath* case seems to have been repeatedly accepted as an authority in support of the right of recovery, but the error of this is apparent from *United States* v. *Burchard,* 125 U. S. 176, 31 L. Ed. 662, 8 Sup. Ct. 832, where it is said: "Whether the government can in any case be precluded from reclaiming money which has been paid by its disbursing and accounting officers under a mistake of law, is a question which it is not now necessary to decide any more than it was in *McElrath* v. *United States,* where it was suggested."

Some of the United States decisions were controlled by statutes, and involved a holding that the official did not act judicially; as was the case in *Wisconsin Central R. Co.* v. *United States,* 164 U. S. 190, 41 L. Ed. 399, 17 Sup. Ct. 45. It was held in that case that the word "mistake," as used in a section directing suits for the recovery of money wrongly paid, includes an erroneous conclusion in the construction or application of a statute. But it was also said that as a general rule, and on grounds of public policy, the government cannot be bound by the action of its officers who have made unauthorized payments through a misconstruction of the law under which they have assumed to act. The cases cited in connection with this statement were cases which involved the rights of the government under contracts made by special agents of an executive department. But the Court also quoted with approval certain remarks of the court of claims, to the effect that the doctrine regarding the recovery of payments mistakenly made does not have such general application to public officers, using the funds of the people, as it does to individuals dealing with their own money, and that money paid in violation of law on the certificates of accounting officers may generally be recovered where there are no peculiar circumstances to make such recovery inequitable. It is doubtless true that the tendency of recent decision has been to limit the application of the doctrine as regards official disbursements, but the authorities certainly fail to sustain the State's contention to its full extent.

There was no claim of any want of good faith on the part of the auditor. The accounts were allowed upon examination and consideration. The case states that there was no misstatement, misrepresentation, concealment or suppression on the part of the defendant, unless with reference to one item, to be considered hereafter. The State excepted to the refusal of the court to permit a recovery of certain sums allowed the defendant for his services and expenses on days in which he rendered no service other than in travelling to or from the place of his appointment; and other sums allowed him for the use of his own team in going between his home and the railroad station, and for the expense of telephoning for his team to meet him. It is not claimed but that the auditor's disposition of the matter was based on an adequate knowledge of the facts. The State assumes that the allowance of these charges was a mistake of law, and that the exception to the ruling regarding them raised the question whether a mistake of law on the part of the auditor concludes the State. We think this view is erroneous, as regards both services and expenses. The statute allowed the defendant a fixed sum per day for his services, and his necessary expenses when away from home. No question regarding time spent in the actual performance of official duties is involved. The time necessarily spent by a commissioner in travelling to and from the place of his appointment is time spent in the service of the State; so no distinction is to be made between the two classes of items under consideration. The law allows for this service and these expenses if they are necessary, and the question of necessity depends upon the facts, and the auditor is empowered to determine the facts. Whether the running time of available trains is such that the official is justified in travelling to or towards his destination the day before his services are to be rendered, or in deferring his return until the morning after they are concluded; and whether the public conveyance in some stage of his journey is of such a character that the particular official is justified in going by private conveyance; and whether in a case of this kind the circumstances were such as required that the conveyance be summoned by telephonic message,—are all matters to be determined by the auditor in the proper exercise of his discretion, and his determination thereof so made will be binding on the State.

It will be advisable to make further inquiry regarding the charges for team service, in view of one ground of objection urged at the trial. It appears from the exceptions that the State claimed that the allowance of these charges, if otherwise permissible, was vitiated by the manner in which the account was presented and verified. The defendant's expense accounts did not show that the team charged for was his own, but were made out as though the team was furnished by one of his sons or hired men; and in each instance the defendant took a receipt, as if for money paid out, signed by the person whose name was so entered in the account; and these receipts were returned with the accounts as vouchers. Nothing is now urged regarding these charges in line with the ground of objection above stated. The argument here is confined to grounds applicable to all the items of the specification which the court refused to submit to the jury. In recapitulating the claims regarding the different classes of charges, it is said of the class now under consideration that it was a fair question for the jury whether it was necessary that the defendant should use his own team at regular livery rates when there was a reasonably good public conveyance by which he could have travelled. In these circumstances the court would ordinarily give no consideration to the further objection made below, but we proceed with the inquiry here in order that our disposition of the matter may not be taken as an implied approval of the course pursued in presenting and receiving the claim.

It is clear that if the auditor had acted upon the claim in bad faith, or had been deceived by the manner in which the claim was presented, his allowance would be subject to review. But the exceptions negative the existence of any collusion between the auditor and the defendant, and of bad faith in any form on the part of the auditor; while the State's brief emphasizes the fact that the auditor allowed the charges with full knowledge of all the matters above stated, and the circumstances of residence and acquaintance make it equally certain that the defendant was aware that the auditor had this knowledge. The situation rather supports the theory of the trial court, that the manner of presentation was due to a belief on the part of the defendant that items for transportation of this class, however the transportation was provided, must be accompanied by

vouchers. But these receipted bills, which represented no actual payments, were fictitious writings, and were not entitled to be treated as vouchers. The auditor, having knowledge of the facts, ought not to have received the account in the form in which it was presented, nor have permitted the so-called vouchers to go into the files. But the improper presentation of the claim did not prevent the making of a valid allowance upon the facts known to the auditor. The law does not preclude an allowance for the use of an official's own team where the use of a team is necessary, at a reasonable compensation for the use of a team so furnished; and if this account had been made out according to the fact, the claim would have been entitled to consideration, although not accompanied by vouchers. The provision requiring vouchers will be inapplicable in such a case, for there will be no receipted bills for money paid out. So no distinction is to be made between the charges for team service and the other items withdrawn from the consideration of the jury. All were allowed and paid in good faith, upon full knowledge of the facts and without inducement of fraud or misstatement, for monies actually paid out or provision lawfully made in lieu thereof; and they cannot now be reclaimed.

The court excluded evidence offered by the defendant to show that the auditor, in adopting the practice of allowing for a whole day, where a part only was taken, made investigation, and adopted what he understood to be the approved course of the National government. The court afterwards held that the defendant was legally entitled to an allowance on this basis, and so instructed the jury. The evidence offered would have tended to show that the auditor acted in good faith in making this allowance, but the defendant cannot have been harmed by its exclusion, in view of the position finally taken by the court.

The court permitted the State to inquire of the auditor if he undertook to ascertain whether the defendant had performed the services for which he charged, and to show the extent of the effort made. This was clearly admissible as bearing upon the question of the auditor's good faith.

The defendant excepted to the introduction by the State of the defendant's personal expense accounts and accompanying vouchers, on the ground that they were immaterial. The

defendant's brief offers no suggestion in support of the exception, and no reason occurs to us for sustaining it.

We have already referred to the statement in the defendant's exceptions that "there was no misstatement, misrepresentation, concealment or suppression by the defendant of any facts connected with the several items," unless the facts therein afterwards stated tended to show otherwise. The facts afterwards stated relate solely to the item which included the charge for the board of defendant's wife. But the plaintiff argues that this statement of defendant's exceptions is controlled by a reference to the evidence. The reference relied upon is in these words: "Upon defendant's motion for a verdict and his motion to set aside the verdict, the reporter's transcript of the testimony and all the exhibits are referred to." The defendant's motions were based mainly upon the claim that there was no evidence tending to show a right of recovery. This reference to the transcript was essential to a consideration of the motions in this Court, and it is not incompatible with a restrictive declaration like that in question. We think this explicit statement of the exceptions must be given effect according to its terms, in the absence of a provision that the transcript shall be controlling.

Of the nine items of the plaintiff's specifications which were left to the consideration of the jury, six related to occasions when the defendant passed Sunday or a night at places other than those where his business had been or was to be transacted, some of which were not on his route to or from such places; and these may be taken up together. In view of the statement of the exceptions above considered it must be understood that the vouchers submitted to the auditor showed the facts in this regard; and it is not probable that this statement was incorporated in the exceptions through any misapprehension, as regards these items, for the defendant's motion for setting aside the verdict recites, with reference to several of them, that the vouchers showed on their face where the hotel bills were paid; and nothing has been submitted to us in any form that indicates the contrary. The defendant's motion also recites, with reference to certain items of this class, that the State claimed to recover only the excess of the hotel bills so paid over what the charges would have been at the places where the hearings were had, and it is stated in defendant's brief that the uncontradicted evidence of the

defendant showed that the expense to the State was in no way increased by these variations; and the correctness of these statements may properly be assumed, for the State's brief submits nothing inconsistent with the defendant's claims in this respect. In this situation the only question left is whether the auditor's action was in excess of his jurisdiction. There is nothing in the case as presented to us that indicates that the defendant spent the Sundays or nights where he did for the transaction of any business of his own. It was clearly for the auditor to say whether the defendant's absence from home over Sunday was necessary, and whether his staying over night to travel by day trains was justifiable, and this being so we think it cannot be said that his allowance of a hotel bill incurred in a town other than that where the hearing was had, at no greater expense to the State, was void for want of jurisdiction. It follows that the auditor's allowance of these items was conclusive, and that they were improperly submitted to the jury.

On one of these six occasions the defendant, having business at Brattleboro on Saturday and Monday, went to Springfield, Mass., to stay over Sunday instead of remaining at Brattleboro; and as applied to this item the decision just announced is not unanimous.

On another of these occasions the defendant having in hand a matter which required an interview with a railroad official in Boston, went to Springfield, Mass., on Saturday, remained there over Sunday, and went to Boston Monday morning; attended to his business there that day, and returned home on Tuesday. He was unable to tell from his data where he was or what he was doing on the Saturday when he commenced the trip. The statement of the matter in defendant's brief indicates that he had no appointment with the Boston official for any particular time. If the facts suggest any ground on which this item might be distinguished from the other items of the group, reference should be had to the position of the State and the action of the court in regard to it. After the charge had been given and exceptions noted, the court specially instructed the jury that the only claim made by the State concerning this item was that more days were used and more expenses incurred than were reasonably necessary under all the circumstances of the case. This definitely put the item upon the same basis as

the others, and we could not treat it differently without giving the State the benefit of a position it expressly rejected, and making up a case different from that tried below.

Two of the remaining items left to the consideration of the jury covered the amount allowed for a day's service at Montpelier, and expenses, at the time of the Republican State convention. The defendant testified that the commissioners met at their room in the State House on that day, and did some work there. The other commissioners had no recollection of being there or doing any work. The auditor and several other officials and clerks testified that they saw the commissioners at the State House on that day. One of the commissioners had a charge for that day, but accounted for it on another ground. The defendant insists that as the evidence stood there was no question for the jury. We think it is clear that there was evidence tending to show that the charges were for a service never rendered, and for expenses not incurred in behalf of the State.

The only argument of fact presented by the State regarding the matters submitted to the jury is that the auditor had scarcely any knowledge as to the defendant's services and expenses, and was compelled to rely upon his sworn statement that the account presented was a true and correct statement of the time actually spent and the money necessarily paid out in the discharge of his official duties, and that the jury might well find from the testimony of the defendant himself, in connection with the affidavit, that he had misrepresented or concealed facts material to each of the items submitted. The application of this argument to the items now under consideration requires a further reference to the paragraph of the exceptions which negatives the existence of fraud and misstatement. It is manifest that to make this paragraph consistent with the course of the trial these charges should have been excepted as well as that covering the board of the wife on another occasion. The claim here is not that more time and expenses were allowed in connection with a certain service than were properly chargeable, but that an allowance of a day's service and expenses has been made where no service was rendered. The defendant procured the allowance of these charges as due him for services rendered and expenses incurred on a specified occasion. The introduction of evidence tending to show that

no services were rendered on that occasion necessarily raised the question of fraud or misstatement. But when effect is given to the paragraph which negatives fraud and misstatement, the question raised by the evidence is disposed of, for if there was no misstatement, fraudulent or otherwise, in the claim as presented, the services were in fact rendered, and there was no issue thereon for the jury. The failure to except these items was doubtless an inadvertence, but with the exceptions standing as they do the verdict is necessarily impeached. But in view of the disposition to be made of the remaining question, it is not necessary to consider this situation further.

The remaining claim submitted to the jury was for the recovery of an item allowed the defendant as a part of his personal expenses, which was in fact for the board of his wife on an occasion when the defendant claimed it was necessary that she should be with him to assist in the care of an inflamed eye. There was nothing in the defendant's account as presented to the auditor that indicated that a part of the charge in question was for the board of his wife, and the State's evidence tended to show that the defendant gave him no information regarding this when he presented his account. On the State's evidence, the account as presented was a misrepresentation, which, whether fraudulently intended or not, operated as a concealment of a fact material for the auditor to know in exercising his judgment and discretion regarding the claim, and this deprived the auditor's allowance of the conclusive effect it might otherwise have had. The recovery of this item involves no disputed question regarding the effect of payment, for the verdict determines that the money was paid without a knowledge of the facts.

It follows from our disposition of the matter last considered that the defendant's motion that a verdict be directed in his favor was properly overruled. But the judgment must be reversed for the error in permitting a recovery upon the six items that were considered together. The points made in support of the exceptions to the charge and the motion to set aside the verdict are sufficiently disposed of by the views already expressed.

*Judgment reversed and cause remanded.*