Amos Blodget *vs.* Abram Brinsmaid.

<span style="float:right">Chittenden,<br>January,<br>1837.</span>

Relationship *by affinity* ceases upon the dissolution of the marriage which created it.

This was an action of ejectment, for land in Burlington. On trial, it appeared that in 1833, the defendant, as administrator of the estate of John Collard, recovered this land in ejectment. The plaintiff, in 1835, as the creditor of said Collard, deceased, recovered a judgment against the defendant, as administrator, and took out execution against the goods, chattels and lands of said deceased, and caused the same to be levied on the land in question. The defendant read in evidence a quit claim deed from said Collard to him, dated in 1827, of all his claim, &c. to the towns of Burlington and Essex. This was all the evidence of title given by the defendant. The defendant also proved, that Samuel Hickok, one of the men, appointed by a justice of the peace to appraise said land on the plaintiff's execution, married the sister of said Collard, but that she died many years before this transaction; and insisted that said Hickok was therefore disqualified to act as appraiser, as aforesaid, and so the said levy was insufficient. The court overruled said objection and rendered judgment for the plaintiff; to which the defendant excepted, and the case passed to the supreme court.

*J. Maeck for the defendant.*—The defendant, by virtue of his judgment against Brinsmaid, as administrator of Collard, had no right to levy the execution on the premises in question. The land did not belong to the estate of Collard, but to the defendant, in his own right. The deed of 1827 from Collard, the intestate, to the defendant, which was wholly unquestioned, pro-

Chittenden,
Jonnary,
1837.

Blodget
v.
Brinsmaid,
Admr.

ved that the land belonged to the defendant, in his own right. Though the defendant, in order to recover of Warner the possession, counted in the character of administrator of Collard, that makes no difference. The intestate's deed is conclusive evidence that he had parted with all his interest in it. The probability is, that the counsel, who commenced the original action of ejectment against Warner, supposed this deed would be affected by the act of 1807, Statute, page 171. But that act could not have applied, as Warner claimed under Adams, who made a defective levy of execution in his favor against Collard. Here there was no adverse possession. Suppose the intestate had indorsed a chose in action to defendant, and defendant instead of bringing the suit in his own name, had brought a suit as administrator to recover it, would it therefore be assets, as a matter of course? But there are other fatal objections to the plaintiffs recovering. He claims as an execution creditor, and therefore, if he has not strictly complied with the law, he gained no title. The proceedings of an excution creditor ought to be subject to a "searching operation,"and if doubts arise as to his having complied with the requisitions of the statute, those doubts ought to be solved against him. The statute, relating to the levy of executions, prescribes that the appraisers shall be judicious and *disinterested*, &c. Hickok, one of the appraisers, married the sister of the intestate, and has issue by her, living, though she is dead. We contend that Hickok was not a disinterested appraiser between those parties, within the statute. In giving a judicinal construction to the qualification "disinterested," regard must be had to the nature of the functions the individual was to perform. 1st. Were they merely ministerial? If so, then, perhaps, the term might be limited to a pecuniary interest. But here they were not ministerial, but partaking of the nature of judicial duties. The appraisers were to exercise their judgment. It is a cardinal principle in the administration of justice, that all, who are to decide controversies and determine rights between others, shall be *disinterested*, and by this we understand not only that they shall be free from any pecuniary interest, but, also, that they shall not be of kin or connection to either of the parties. The statute has disqualified all standing within the fourth degree of consanguinity or affinity. Stat. p. 131. Sect. 23, and in other places.

It is true the Statute, now in question, has not determined

how near or distant the relationship may or must be, but, in the silence of the Statute, the court must adopt a rule. It is manifest that a father would not be a legal appraiser for the son, or a son for the father, or a brother for a brother ; therefore, relationship renders the appraiser interested, and disqualifies him. We must recur to the probable intention of the legislature, and to the general system of legislation, on matters coming within the scope of the principle. 1 Mass. 146—3 do. 21—8 do. 423—18 do. 254.

The legislature, then, having enacted that those, standing within the fourth degree of consanguinity or affinity, are incompetent to act in a judicial capacity, their intention undoubtedly was to apply the same rule to this case. It is objected, however, that Mrs. Hickok is dead, and, therefore, the objection ceases. Even had she died without issue, still Hickok would not be a competent appraiser, but as she died leaving issue, who are still living, and who are heirs to Collard's estate, the objection remains in full force.

Again, it is said we ought not to complain, as the presumption is, that, if the appraiser had any bias, it was in our favor. It however makes no difference, the law makes the appraiser incompetent, and we have waived nothing.

*C. Adams for plaintiff.*—I. The recovery by Brinsmaid, as administrator of Collard, in his suit against Isaac Warner, was *prima facie* evidence that the land, thus recovered, was assets in the hands of Brinsmaid.

II. The deed from Collard to Brinsmaid was not competent evidence to rebut the presumption.

This identical question was decided in the suit between these parties, January term, 1835. On a plea of no assets of Collard, this same deed was offered and rejected, and the court, on exceptions, affirmed the decision. This question, then, as between these parties, is at rest.

III. Hickok was a disinterested appraiser. He was not related to either of the parties. He was not related to Collard, for though he once married Collard's sister, she had been long dead.

IV. If the administrator, with a deed in his pocket, still chooses to claim the land, as administrator, he is bound by his election, and is estopped by his recovery from any claim of right in himself.

The court will, also, be slow in favoring a party, who inten-

tionally suppresses the evidence of his title for years, and, by this suppression, seeks to gain an advantage.

Blodget
v.
Brinsmaid,
Admr.

COLLAMER, J.  The only claim to this land, by defendant, was his deed of 1827.  The effect of this evidence was fully passed upon by this court, two years since.  It was then decided, that *this evidence alone* could not enable defendant to hold this land, in his own right, against the legal presumption arising from the judgment, which the defendant recovered for this land, as the administrator of Collard.  *First*, Because the legal presumption would be, that the recovery by the administrator was upon a title obtained by Collard after 1827.  *Secondly*, There was no testimony tending to explain why the defendant, while he owned this land, in his own right, actually brought ejectment for it, as the property of Collard, and recovered it, as his administrator. The same question is again presented, and the defendant puts in the same testimony, and no more.  The decision must be the same.  *Blodget v. Brinsmaid, administrator*, (7 Vt. Rep. 10.)

It is, however, insisted, that the plaintiff cannot recover, because Hickok, one of the appraisers on the plaintiff's execution, formerly married the sister of Collard, she being long since dead. The statute provides that the appraisers shall be " judicious and disinterested freeholders."  The word *disinterested*, as here used, in relation to the performance of a *judicial* duty, we consider as meaning something more than being devoid of *pecuniary* interest.  The appraisers should stand in no such relation to either party as would disqualifiy them for the execution of judicial power, between them.  Was Hickok, when acting as appraiser, related to Collard, by consanguinity or *affinity* ? Consanguinity is the having the blood of some common ancestor. Affinity arises from marriage only, by which each party becomes related to all the *consanguinei* of the other party to the marriage, but in such case, these respective *consanguinei* do not become related, by affinity, to each other.  In this respect, these modes of relationship are dissimilar.  1 Bla. Com. ch. 15.  Page 434. Christian's notes to do. 15 Viner's Abr. 256.

The relationship, by consanguinity, is, in its nature, incapable of dissolution, but the relationship, by affinity, ceases with the dissolution of the marriage, which produced it.  Therefore, though a man is, by affinity, brother to his wife's sister, yet, upon the death of his wife, he may lawfully marry her sister. Such is the law of this State, whatever may be the statute of Hen. 8.                                      Judgment Affirmed.