ROBERT A. DAVIDSON *v.* G. C. WHITEHILL, ET AL.

October Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed February 11, 1914.

*Certiorari—Discretion as to the Issue of Writ—Answer—Record —Facts Outside Record—Joining Demurrer and Answer— Judicial Nature of Writ—Decisions Reviewable—Judicial Acts—Granting Liquor Licenses—Scope of Review on Certiorari—Board of License Commissioners—Qualification of Members—Relation to Applicant—"Affinity"—"Affinitas Affinitatis."*

Since P. S. 1324 merely gives this Court jurisdiction of prerogative writs, including *certiorari*, but prescribes no rules of procedure, the common law rules apply, except as rendered obsolete by our practice of hearing the merits of the case on the petition for the writ.

The issuing of a writ of *certiorari* is largely a matter of discretion, from which fact has sprung the practice of hearing the merits on the petition for the writ.

The inquiry on a petition for a writ of *certiorari* is based on the record, and so an important function of the answer is to bring up the record, where that is not sufficiently set forth in the petition.

The answer to a petition for a writ of *certiorari* is not confined to bringing the record before the court, and to admitting or denying the allegations of the petition, but may state facts outside the

record on which an issue may be joined necessitating the taking of testimony.

A petition for a writ of *certiorari* must state facts sufficient to authorize the issuance of the writ, and only matters assigned as error in the petition will be considered on hearing.

A demurrer incorporated in an answer to a petition for a writ of *certiorari* will be treated as a motion to quash, and that may be interposed at any time before the writ is awarded, to take advantage of substantial defects in the petition.

At common law *certiorari* lies only to inferior courts and officers exercising judicial powers, and then only to review an act judicial in its nature, and not merely ministerial, but where a new jurisdiction is created, the proceedings so authorized, whether in court or not, if of a judicial or *quasi* judicial character, and not subject to review by other means, may be reviewed by writ of *certiorari.*

In determining whether a particular act is "judicial" in character so as to give jurisdiction in *certiorari,* and not merely ministerial, executive, or administrative, the exercise of judgment and discretion by the officer or tribunal, together with the right of the parties affected thereby to have both notice of the proceeding and an opportunity to be heard in opposition thereto before such officer or tribunal, which is not otherwise authorized to proceed, is the distinguishing test.

Since P. S. 5115, 5119 provide for both notice and a public hearing before a board of license commissioners can grant a liquor license, the action of such board in granting a license is of a *quasi* judicial nature, and so *certiorari* will lie to review questions of law affecting their judgments or orders, including errors of law affecting the merits of the case and occurring in the course of the proceedings.

But though an act be judicial or *quasi* judicial, if it is also discretionary, it cannot be reviewed on *certiorari,* unless possibly, to correct a manifest abuse of discretion.

The evidence will be reviewed on *certiorari* only when some question of law relating thereto is raised, as to determine whether it supports or warrants the adjudication, and never with reference to the credibility of witnesses, or the weight to be given to conflicting testimony.

*Certiorari* issues only when there is no other adequate remedy at law, and brings up any substantial questions of law affecting the merits of the case involved in the proceedings below, the correctional

power of *certiorari* extending no further than to keep the inferior tribunal within the limits of its jurisdiction, and to require it to exercise that jurisdiction with regularity.

"Affinity" results from marriage, and is an artificial relation existing only between each spouse and the blood relations of the other spouse, and neither is related by affinity to the affinity relations of the other, so that, if your wife and my wife are sisters, you and I are not related by affinity, our relationship being more accurately described as "*affinitas affinitatis*," a connection arising from marriage, but which is neither consanguinity nor affinity. *Clapp* v. *Foster*, 34 Vt. 580, explained and distinguished.

P. S. 1224, providing that "no chancellor, judge, justice, master in chancery, juror or other person shall act in a judicial capacity in, or as a trier of, a cause of action in which he is related to either party within the fourth degree of consanguinity or affinity," does not apply to a board of license commissioners, and so will not disqualify a member of the board because of his relationship to the applicant for a liquor license.

PETITION for a writ of *certiorari,* brought to the Supreme Court for Caledonia County at its October Term, 1913, and heard at its November Term, 1913, on petitionee's joint demurrer incorporated in their joint answer, and on petitioner's motion to strike from the record and from the files said joint demurrer and answer. The opinion fully states the case.

*Theriault & Hunt* for the petitioner.

*Simonds, Searles* and *Graves* for the petitionees.

TAYLOR, J. This is a petition for writ of *certiorari* to review the judgment and orders of the petitionees, the license commissioners of the town of Groton, granting a second class license to one James Frost to sell intoxicating liquors in said town. The petition was entered and docketed on May 7, 1913. At the October term following, the case was not assigned for hearing and, the petitionees not having entered an appearance, was continued to the November term, at which term petitionees Whitehill and L. G. Welch filed their joint demurrer and answer, and also a motion for the appointment of a referee to try and determine the issues of fact raised by the answer.

Whereupon the petitioner filed a motion to strike from the record and files said joint demurrer and answer and said motion for reference. The motion to strike is based upon several grounds, among which are: 1. That the matter in demurrer is out of time. 2. That the demurrer and answer are filed jointly. 3. That the answer is out of time. 4. That the answer is not the answer of the board of license commissioners but of two individual members thereof. 5. That the answer is not accompanied by the record of the license commissioners.

The common law relating to *certiorari,* so far as applicable to our situation and circumstances, is our guide. Our statute (P. S. 1324) merely gives this Court jurisdiction of prerogative writs including *certiorari* but prescribes no rules of procedure. By manifest implication the function and manner of use of the proceeding, as practiced in the common-law courts of England, was adopted as part of the common law. *State ex rel. Page* v. *Smith et al.* 46 Vt. 266, 282; *Clement* v. *Graham,* 78 Vt. 290, 304, 63 Atl. 146, Ann. Cas. 1913 E, 1208. But many of the common-law rules of procedure are rendered obsolete by our practice of hearing the merits of the case on the petition for the writ. The rules of practice in county court do not apply; and an examination of our cases fails to disclose any well settled practice in this Court with reference to pleadings subsequent to the petition.

It is settled by repeated decisions that the issuing of the writ is largely a matter of discretion, from which fact has sprung the practice of hearing the merits of the case upon the petition for the writ and practically deciding the whole case upon the granting or refusing of the writ. It follows that under our practice an important function of the so-called answer is to bring up the record, to quash which the writ is sought. The inquiry in the application for *certiorari* is based on the record. *State ex rel. Page* v. *Smith et al.,* 48 Vt. 266, 282; and, in case it is not sufficiently set forth in the petition—which for obvious reasons in many cases cannot be done—the petitionee should embody it in his answer, or, in other words, should make return of the record. *Stumpf* v. *Board of Supervisors,* 131 Cal. 364, 63 Pac. 663, 82 Am. St. Rep. 350; *City of Lowell* v. *County Comm'rs,* 146 Mass. 403, 16 N. E. 8. In the case at bar the answer does not recite the record. It admits or denies the facts alleged in the petition and alleges further facts, which, if true,

the petitionees contend would defeat the issuing of the writ; and that the facts in issue may be determined they ask for a reference. The granting or refusing of the writ being a matter of discretion the answer is not confined to bringing the record before the court and to admitting or denying the allegations of the petition; but the exigencies of the case may require the allegation of facts outside the record upon which an issue may be joined that will necessitate the taking of testimony in such a manner as the court may order. This was the case in *Sowles* v. *Bailey,* 69 Vt. 277, 37 Atl. 751.

Whether the defects in the answer relied upon by the petitioner support the motion to strike, or whether he should move for further answer, we do not decide.

The objection to joining the demurrer and answer presents a question of some difficulty when viewed as a technical. question of pleading. At common law the sufficiency of the petition seems to have been raised by a motion to quash or a motion to dismiss in the nature of a demurrer to the petition or to the writ, and the terms "quashal" and "dismissal" are used interchangeably in the books. 1 Tidd's Pr. 403. It is a motion addressed to the discretion of the court, to be granted or denied as justice may require. *McDonald* v. *McDonald,* 141 Ill. App. 259; *Ullman* v. *Sandell,* 158 Mich. 396, 122 N. W. 617. Like a demurrer it challenges the relator's right to relief, assuming that all the material facts of the petition, so far as well pleaded, are true. *Schmitt* v. *Hines Lumber Co.* 124 Ill. App. 319; 4 Standard Ency. of Proc. 933. At common law the court quashed the writ only after a return had been made, because it is said, a court cannot quash a writ that is not before it. 1 Tidd's Pr. 403; *Winegrath* v. *Mayor,* 77 N. J. L. 448, 72 Atl. 71. In some jurisdictions it is held that a motion to quash more properly lies before a return is made. *Flournay* v. *Payne,* 28 Ark. 87; *Jordan* v. *Slaughter,* 10 Tex. 318; *People* v. *Mc-Lellan,* 94 N. Y. Supp. 1107; and in Illinois that, it being in effect a demurrer to the petition, the motion is waived if not made before return. *Kusel* v. *Chicago,* 121 Ill. App. 469.

With reference to the motion to strike off the demurrer as being out of time, at common-law the practice seems to have been to require objections to the petition to be made at the return term and if not then made they were waived. This is the practice in several sister jurisdictions. *Hodge* v. *Dillon,*

Cooke (Tenn.) 278; *Smith* v. *Hearne,* 2 S. & P. 81; *Howth* v. *Shumard,* (Tex. Civ. App.) 40 S. W. 1079. But at common law, and very likely in the states where this strict rule prevails, the merits were not heard on the petition. The proceeding on the petition was in the nature of an inquiry whether there was ground for having the record returned. Under such a practice the necessity for a strict rule as to dilatory objections is more potent than under ours. As has been seen, the purpose of the demurrer is to challenge the right of the petitioner to the writ on the facts alleged. The petition must state facts sufficient to authorize the issuance of the writ and on its face present a meritorious case. Only matters assigned as error in the petition will be considered upon hearing; and if the petition contains no assignment of error, it presents nothing with which this Court can deal. 4 Standard Ency. of Proc. 907, 910.

The petition for the writ being addressed to the discretion of the Court and, if the petition contains no assignment of error, there being nothing before it with which this Court can deal, it is but proper exercise of discretion that we should examine the petition to see if it alleges substantial grounds of error in the proceedings below, when our attention is called to claimed fatal defects therein. In a proceeding of this character it would be idle to sustain the petitioner's objections to the pleadings with the only result of postponing consideration of questions going to the merits of the case with the added expense and delay. Accordingly the demurrer will be treated as a motion to quash, which by analogy to proceedings for a writ of *mandamus,* may be interposed, at any time before the writ is awarded, to take advantage of substantial defects in the petition. On such a motion the proceedings fall for want of proper foundation to sustain them. See *Clement* v. *Graham,* 78 Vt. 290, 305, 63 Atl. 146, Ann. Cas. 1913 E, 1208, and cases there cited.

The petition is challenged upon grounds that raise the questions:

(1) whether a board of license commissioners in granting licenses acts in a judicial capacity; and, if so, (2) whether the statute disqualifying certain persons from acting in a judicial capacity (P. S. 1224) relates to officers or boards in the discharge of administrative affairs.

At common law *certiorari* lies only to inferior courts and officers exercising *judicial* powers; not only so, but the act to

be reviewed must be judicial in its nature and not merely minis-
terial. 4 Dillon, Mun. Cor. §1593 and note. Practically all the
courts of this country follow the common-law rule and hold
that the purpose of the writ is to review none but judicial or
*quasi* judicial acts, and that it can in no case extend to re-
viewing acts that are ministerial, legislative or executive. When
there is a new or summary jurisdiction created the proceeding
so authorized, whether in court or not, if of a judicial or *quasi*
judicial character and not subject to review by other means,
may be reviewed by this writ. There is room for great differ-
ence of opinion, however, whether certain proceedings are
judicial or not. Confusion arises in drawing the line between
judicial and other acts when the inquiry relates to officers or
boards of municipalities, whose functions are primarily of an
administrative character; and there is considerable diversity
of judicial opinion respecting its exact location.

1. Does a board of license commissioners act in a judicial
capacity in granting or refusing applications for license? It
must be conceded at the outset that acts of a judicial character
are not confined to the courts. It is the quality of the act
and not the official classification of the actor that determines
this question. When considering whether a particular act of a
court, or of an officer charged with judicial or *quasi* judicial
functions is judicial or ministerial, the exercise of judgment and
discretion is deemed the distinguishing test. *Fuller* v. *Gould
et al.*, 20 Vt. 643; *Stearnes* v. *Miller et al.*, 25 Vt. 20; *Davis*
v. *Strong et al.*, 31 Vt. 332; *Universalist Society of Fletcher*
v. *Leach et al.*, 35 Vt. 108; *State* v. *Howard*, 83 Vt. 6, 74
Atl. 392. But this test fails to distinguish judicial from
purely executive or administrative functions. Executive or ad-
ministrative acts often involve the exercise of discretion and judg-
ment. An official act requiring the exercise of discretion and
judgment may be executive or judicial according to the nature
of the subject-matter. *State* v. *Howard, supra.* As is said in
*People* v. *Board of Commissioners*, 97 N. Y. 37: ''The fact that
an act is discretionary, and that in exercising discretion judgment
must be employed, does not prove that the act is judicial.'' Mr.
Freeman in his note to *Wulzen* v. *Board of Supervisors*, 40
Am. St. Rep. 29, after reviewing many cases deduces the follow-
ing as the more approved test: ''An action is necessarily
judicial if the parties to be affected thereby have a right

both to notice of the proceeding and to a hearing in opposition to it before some tribunal which is not otherwise authorized to proceed.'' He uses the word ''tribunal'' as embracing not alone courts, but also boards or individuals whose duty it is to decide.

Reference to a few among the many cases involving this question will show the trend of decision in other jurisdictions: ''If the proceeding is one that is ministerial and in which no person has a right to be heard, it is rarely deemed reviewable on *certiorari.''  Att'y Gen.* v. *Northampton,* 143 Mass. 589, 10 N. E. 450, to the same effect is *Townshend* v. *Copeland,* 56 Cal. 612. Where there is no authority to proceed without notice, and it is not given, the writ will lie. *Miller* v. *School Trustees,* 88 Ill. 26; *State* v. *Graham,* 60 Wis. 395, 19 N. W. 359. The Court of Appeals of New York in *People* v. *Martin,* 142 N. Y. 228, 36 N. E. 885, 40 Am. St. Rep. 592, went even beyond the rule stated above, holding that the writ would lie to review the action of a board of police commissioners who were required to publish a list of certain nominations in a newspaper of the dominant political party having, ''according to the best information they can obtain,'' the largest circulation within the city. That court held that the action of the board was judicial, because they were not authorized to act arbitrarily not without making inquiry in good faith, though they need not resort to any particular evidence, nor give the various newspaper representatives a formal hearing.

Numerous cases relating to removal from office point to the same conclusion. While removal from office is generally held to be an executive function, if the removing officer or board may act at pleasure and upon such inquiries as he or they may think best to make, it is pretty generally held that, if the law vesting the authority to remove provides that it shall be exercised for cause only and, either expressly or by implication, that the officer against whom the proceeding is shall have notice and an opportunity to be heard, then the proceeding is judicial in character, because the power to hear and determine is to be exercised as in courts only after notice and hearing on the merits. *State* v. *Duluth,* 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595; *Speed* v. *Detroit,* 98 Mich. 360, 57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555; *Carter* v. *Durango,* 16 Colo. 534, 27 Pac. 1057, 25 Am. St. Rep. 294; *People* v. *Stuart,* 74

Mich. 411, 41 N. W. 1091, 16 Am. St. Rep. 644; *State* v. *Harrison,* 113 Ind. 434, 6 N. E. 384, 3 Am. St. Rep. 663. From these cases it is seen that an act not essentially judicial may be made so by requiring it to be preceded by an investigation after due notice to the parties interested.

Applying the test of notice and right to be heard, which seems to us a satisfactory criterion, it would follow that the local boards of license commissioners in disposing of applications for license to sell intoxicating liquor act in a *quasi* judicial capacity. The statute authorizing such boards to grant licenses provides both for notice and a public hearing before the license can be granted. P. S. 5115 and 5119. It is idle to say that the right to notice and hearing extends only to the property holders within a certain distance on the street from the place where the desired license is to be exercised. The right of such property holders to object merely affects the jurisdiction of a majority of the board to act, the law providing that in such case the license shall not be granted except by the unanimous decision of the board. P. S. 5119. That others are entitled to be heard is apparent when the purpose of the hearing is taken into account. The board may refuse a license to an applicant whom it finds unfit. P. S. 5120. It is prohibited from granting a license for various specified reasons which we do not need to detail here. P. S. 5121-5124. Public policy demands that anyone aware of the applicant's unfitness, or of disqualifying facts, should have an opportunity to be heard in objection, and such is the evident purpose of the statutory requirement for notice to the public and a subsequent hearing. Moreover, the board is required to keep a record of its doings. It may also require statements made before it to be sworn to, and to this end authority to administer oaths is conferred upon the board, which is recognized in *Blood* v. *Bates,* 31 Vt. 147, 150, as one of the characteristics of a judicial tribunal.

The action of boards of license commissioners in respect of granting licenses being *quasi* judicial by the unanimous decisions of the courts *certiorari* will lie to review questions of law affecting their judgments or orders. While it is held in some states that the revisory court can only inquire as to the jurisdiction of the inferior tribunal, the better opinion seems to be that errors of law affecting the merits of the case occurring in the course of the proceedings may be reviewed. *Donahue*

v. *Will County,* 100 Ill. 94; *State* v. *Dodge County,* 56 Wis. 79, 13 N. W. 680; *McAllilley* v. *Horton,* 75 Ala. 491; 4 Dillon Mun. Cor. §1593. But even when the act is judicial or *quasi* judicial, if it is also discretionary, it cannot be reviewed or set aside on *certiorari,* unless, possibly, to correct a manifest abuse of discretion; for, in that case, the act complained of is a mere error of judgment and not a violation of any rule of law. *Ketchum* v. *Superior Court,* 65 Cal. 494, 4 Pac. 492; *Tiedt* v. *Carstensen,* 61 Ia. 334, 16 N. W. 214; *Livingstone* v. *Rector of Trinity Church,* 45 N. J. L. 230.

Questions of fact are rarely, if ever, reviewable upon *certiorari;* so the decision of a question of fact upon evidence introduced at the hearing before the inferior tribunal will not be reviewed unless some question of law relating thereto is raised. *Farmington Co.* v. *County Commissioners,* 112 Mass. 206. In some states the evidence may be examined to discover whether there is any competent proof to justify the adjudication. *People* v. *Board of Police,* 69 N. Y. 408; *State* v. *Whitford,* 54 Wis. 150, 11 N. W. 424; *State* v. *Duluth,* 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595; *Jackson* v. *People,* 9 Mich. 111, 77 Am. Dec. 491; *Keenan* v. *Goodwin,* 17 R. I. 649, 24 Atl. 148; *Com.* v. *Gillespie,* 146 Pa. 546, 23 Atl. 393; *Conover* v. *Davis,* 48 N. J. L. 112, 2 Atl. 667; *State* v. *Bill,* 35 N. C. 373. In such case, however, the evidence is not reviewed with reference to the credibility of witnesses or the weight to be given conflicting testimony. The inquiry is directed solely to determining whether, from competent evidence before it, the decision of the inferior tribunal is sustainable, a question similar to that raised by a motion for a directed verdict, or a motion to set aside a verdict as unsupported by the evidence.

Thus it is seen that the writ of *certiorari* serves much the same purpose in reviewing the actions of inferior tribunals, whose proceedings are summary, or in a course different from the common law, as exceptions or writ of error in proceedings according to the course of the common law. *State ex rel. Page* v. *Smith et al.,* 48 Vt. 282. It follows that *certiorari* issues only when there is no other adequate remedy at law, *Sowles* v. *Bailey,* 69 Vt. 277, 37 Atl. 751; and brings up for review only substantial questions of law affecting the merits of the case involved in the proceedings below. *Stevens* v. *Hill et al.,*

74 Vt. 164, 52 Atl. 437. It will be observed that while power is vested in the court by *certiorari* to review the proceedings of all inferior jurisdictions, including officers and boards acting in a judicial or *quasi* judicial capacity, to correct jurisdictional errors, they will not review their judgments on the merits. The correctional power extends no further than to keep them within the limits of their jurisdiction and see that they exercise it with regularity. *Board of Aldermen* v. *Darrow*, 13 Colo. 460, 22 Pac. 784, 16 Am. St. Rep. 215; *Chase* v. *Miller*, 41 Pa. St. 410.

2. It remains to be considered whether the objection to the action of the board of license commissioners of the town of Groton, viz.: that one of the commissioners was disqualified from acting on the application of Frost by reason of relationship, presents a jurisdictional question, or a material question of law involved in their proceedings, as distinguished from a mere question of discretion. As we have seen, the petitioner claims that, with Commissioner Whitehill acting, the board did not have jurisdiction. It is not necessary to consider the effect upon the jurisdiction of a board of license commissioners, as such, arising from participation in its action of a disqualified member. The petition alleges that Whitehill and L. G. Welch alone acted on Frost's application. This being so, it is clear that, if Whitehill was disqualified, it vitiated the action of the board as constituted. Whitehill and Frost married sisters. The petitioner claims that they are related within the fourth degree of affinity and that the statute disqualified Whitehill from acting on Frost's application.

By the rule as to relationship by affinity at common law, it seems that Whitehill and Frost are not related. Affinity is an artificial relation which arises from the marriage between one of the spouses and the blood relations—the kindred—of the other. A husband is related by affinity to the blood relations of his wife and the wife by affinity to the blood relations of her husband, but not otherwise by affinity. *Blodgett* v. *Brinsmaid*, 9 Vt. 27. The relationship by affinity always depends upon the blood of the two spouses and cannot extend beyond such blood kindred. The affinity relatives of such spouses are excluded. Thus, it is said, my wife's brother's wife is related to my wife by affinity because of the blood relationship existing between my wife and her brother; but she is not related to

me by affinity, because there is no blood in common between us. In other words, the affinity relations of my wife are not my affinity relations, and vice versa. It follows that although a man is related to his wife's sister by affinity, he is not so to his wife's sister's husband. It is, therefore, a maxim that a person related by affinity to one who is related to me by affinity is not related to me by affinity. This is the rule recognized by the great weight of authority. See monographic note to *State* v. *Wall*, 79 Am. St. Rep. 200, where the cases were collated and reviewed. *Chinn* v. *State*, 47 Oh. St. 575, 26 N. E. 986, 11 L. R. A. 630 and note. The few cases to the contrary holding, for example, that persons who marry sisters are related by affinity, go upon the doctrine that husband and wife are one and so that the wife's relatives by affinity are also the husband's. Their relationship, however, is more accurately described as *affinitas affinitatis*, defined in Bouvier's Law Dictionary as, "That connection between parties arising from marriage which is neither consanguinity nor affinity."

The petitioner relies upon the holding of this Court in *Clapp* v. *Foster*, 34 Vt. 580, in support of his claim that Whitehill was disqualified. In that case it was held that one was disqualified, under what is now P. S. 1224, to act as an auditor in the trial of an action of book account, whose wife was first cousin to the wife of one of the parties. The court there recognized that in the strict technical sense the auditor and the party were not related by affinity, but held for considerations of public policy, that the Legislature used the term in the more popular sense and intended to include not only such as would come within the strict rule, but also such as, by common understanding, were related within the prohibited degrees by marriage. It is evident, however, that the court in that decision did not contemplate the application of the disqualifying statute to other than strictly judicial tribunals; nor does it follow that public policy demands a further extension of the statute by construction to include administrative officers or boards even when acting in a *quasi* judicial capacity.

Does P. S. 1224 apply to administrative boards, like boards of license commissioners, when acting in a *quasi* judicial capacity? So far as necessary to the inquiry, that section provides: "No chancellor, judge, justice, master in chancery, juror or other person shall act in a judicial capacity or as a

trier of a cause or matter in which he is related to either party within the fourth degree of consanguinity or affinity.''

The applicability of this statute to other than strictly judicial officers or boards has not been decided by this Court. The numerous decisions construing the statute relate to judges, justices, notaries, jurors and auditors, referees or commissioners appointed to hear matters pending in court. The only case involving disqualification of other than judicial officers is *Blodget* v. *Brinsmaid*, 9 Vt. 27, in which the disqualifying interest of an appraiser acting in proceedings on execution arose. The statute then in force provided that when any execution shall be extended on real estate, ''the same shall be appraised by three judicious and disinterested freeholders,'' etc. The sister of the execution creditor had formerly been the wife of one of the appraisers. The sister had died long before the time in question. The court held that the word ''disinterested'' as used in the statute in relation to the performance of a judicial duty meant something more than being devoid of pecuniary interest, and that such appraisers should stand in no such relation to either party as would disqualify them for the execution of judicial power between them. The real question at issue was whether relationship by affinity ceases with the dissolution of the marriage that created it, the court holding that it did. The statute there under consideration was not what is now P. S. 1224, although the latter was referred to inferentially.

Although we hold that the board of license commissioners, in the proceedings under review, were acting in a *quasi* judicial capacity, and so that this Court would, on a proper showing, review errors of law in their actions, it does not necessarily follow that the disqualifying statute applies to such boards.

The purpose of the statute manifestly was to guard against possible abuse of judicial authority by chancellors, judges, justices and those acting as triers of causes in court. At common law jurors might be challenged for suspicion of bias or partiality; as that a juror was of kin to either party within the ninth degree; that he had been arbitrator upon either side; that he had an interest in the cause; that there was an action depending between him and the party; that he had taken money for his verdict; that he had formerly been a juror in the same cause; that he was the party's master, servant, steward or attorney, or of the same society or corporation with him. 3 Bl. Com. 363.

But at common law judges and justices could not be challenged. Coke on Lit. 294; 3 Bl. Com. 361. "The law," says Blackstone, "will not suppose a possibility of bias or favor in a judge, who has already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea. And should the fact at any time prove flagrantly such, as the delicacy of the law will not presume beforehand, there is no doubt that such misbehavior would draw down a heavy censure upon those to whom the judge is accountable for his conduct."

At the February session 1779 of the General Assembly the common law "as it is generally practiced and understood in the New England States" was established as the common law of this State. See *Clement* v. *Graham,* 78 Vt. 290, 300, 63 Atl. 146, Ann. Cas. 1913 E, 1208. In the revision of 1787, which was the first body of permanent law enacted in this State, the nucleus of what is now P. S. 1224 is found in a statute disqualifying justices of the peace on account of relationship or interest. In the early statutes justices were prohibited from taking "cognizance of any cause" where they were related within the fourth degree of affinity or consanguinity to either party or directly interested in the matter to be determined. They were also forbidden to act as counsel or attorney in any suit or cause pending before them. The words, "do any judicial act," first appear in the revision of 1839 shortly after the scope of the disabling act had been before this Court in a case involving the question whether signing a writ returnable to the county court was taking "cognizance of any cause." *Graham* v. *Todd,* 9 Vt. 166. In the revision of 1797 the disqualification arising from interest and relationship was extended to chancellors and judges. In the revision of 1839 it was provided that "no chancellor shall act on the trial of any cause or matter pending in such court." etc. and that "no judge of the supreme or county court shall sit in the trial of any cause," etc. These separate provisions stood thus until the revision of 1880. In 1867, in an act extending and defining the powers of masters in chancery, it was provided: "No master in chancery shall act as such in any cause, or do any judicial act wherein he shall be a party, or shall be related to either party within the fourth degree of affinity or consanguinity, or shall be interested in the event thereof, or shall be of counsel to either party." No. 10, Acts of 1867.

Some minor amendments were made to these various sections from time to time that are not important to notice.

In the revision of 1880, (R. L. 692), the various sections referred to were consolidated, and the words, "juror or other person," were added. It has been seen that jurors were already disqualified at common law, so this amendment, as to them, was simply declaratory of the common law. In framing the composite section the revisors employed the words, "act in a judicial capacity in, or as trier of, a cause or matter," as equivalent to the various phrases found in the several sections consolidated; nor by adding "or other person" is it at all likely that they had in mind others besides persons performing judicial functions pertaining to the courts, as, for example, auditors, referees or commissioners. The retention of the word, "cause," bears out this conclusion.

It is evident from the history of the development of the statute, as well as from the language employed, that in enacting it the Legislature contemplated proceedings in court. It says, in effect, that no person shall act in the capacity of court or juror in a cause or matter in which he is disqualified as therein provided. Its place in the statutes indicates its true relation. It has come down to us from the remote past as parts of the statute defining the powers of the judiciary. Moreover, in arriving at the legislative intention, the embarrassment of extending its provisions to acts of a *quasi* judicial nature should be considered. If the statute applies to boards of license commissioners, it applies equally to all public officers and boards who are called upon to act in a *quasi* judicial capacity in the discharge of their official duties. Carrying the petitioner's contention to its logical conclusion, the question of authority of all public officers or boards of officers to act when disqualifying interest or relationship exists would constantly arise. In all communities it would seriously embarrass the discharge of public affairs and in some render it practically impossible. A moment's reflection as to its effect upon such boards as selectmen, listers, auditors, school directors, civil authority, makes it evident that the statute was not enacted in contemplation of any such application as the petitioner contends for and public policy forbids that it should be so construed.

33

As the Supreme Court of Georgia said in *Patterson* v. *Collier*, 75 Ga. 419, 58 Am. Rep. 472, "To multiply disabilities by doubtful construction, when not created by words of the statute, would be as unwise as it is impolitic and harmful." This Court in *Batchelder* v. *Nourse*, 35 Vt. 642, declined to extend the statute under consideration by construction to disqualify a justice of the peace from trying a case in which he had previously acted as an arbitrator, and as such formed and expressed an opinion as to its merits; holding that only those disqualifications enumerated in the statute are to be held as effectual to disrobe him of his official capability in the particular case, and that the cause assigned was outside the terms, and equally must be regarded as outside the policy, of the statute.

The question before us is not one of taste or ethics but of legal disability. The comment of Judge Barrett in *Batchelder* v. *Nourse* is not without application here: "While we should find occasion to commend the good taste and good sense which would cause a justice in such a case as this to decline to officiate, yet upon the law as it exists, we are unable to hold that he is not lawfully entitled to ply his office, if neither taste nor sense is operative and effectual to restrain him from such an impropriety."

We are constrained to hold that the statute in question does not apply and that the petition does not show error of law in the proceedings. The writ must be denied.

This disposition of the case makes it unnecessary to consider (1) whether the petitioner alleges such interest as entitled him to the writ, (2) whether the petition is defective in not alleging good faith on the part of the petitioner, and (3) whether the failure to make the licensee a party is fatal.

*The petition is dismissed with costs.*