## Royalton College, Inc. v. State Board of Education

[ 251 A.2d 498 ]

December Term, 1968

Present: **Shangraw, Barney, Smith, Keyser, JJ., and Hill, Supr. J.**

Opinion Filed February 27, 1969

*Downs & Rachlin* for the Petitioner.

*James L. Oakes, Attorney General,* and *Kimberly B. Cheney, Assistant Attorney General,* for the Petitionee.

**Barney, J.** [1] The State Board of Education has ordered the suspension of the degree granting privileges of Royalton College, Inc. To obtain review of this action the college, as petitioner, has asked this Court for a writ of *certiorari.* Since there is no regular appellate procedure provided for review of this action of the board, resort to this writ is appropriate. *In re Petition of Town of Essex,* 125 Vt. 170, 171, 212 A.2d 623.

The ambit of the review afforded is limited to substantial questions of law affecting the merits of the case involved in the pro-

ceedings below. Its issuance is largely a matter of discretion, and is dependent on the lack of any other adequate remedy at law. *In re Taconic Racing & Breeding Ass'n, Inc.,* 125 Vt. 76, 77-78, 209 A.2d 492. The petition must state facts sufficient to justify the issuance of the writ and present, on its face, a meritorious case. It is our practice to examine into the merits of the case on the question of whether or not the writ shall issue. *Rutland Hospital, Inc.* v. *State Board of Health,* 126 Vt. 41, 44, 220 A.2d 722.

Thus it is not for this Court to pass upon the qualifications or shortcomings of Royalton College, Inc., as an educational institution. Nor is it proper for us to perform the functions of a board of education. The question for us is the legal sufficiency and propriety of the acts of such a board which are appropriate for court review. *Petition of St. George,* 125 Vt. 408, 413, 217 A.2d 45.

The facts are available by virtue of the petition and a stipulation of the parties involving agreement as to most of the facts, by admission of matters pleaded subject to certain agreed amendments and consent that in these cases the record of proceedings before the board shall be determinative.

In 1965 Royalton College, Inc., was incorporated as a proprietary, stock corporation, with Anthony Doria, now its president, as principal stockholder by virtue of ownership of all but two of the 2000 shares. At that time, although the purpose of the corporation was educational, it did not seek or claim degree granting privileges. It did offer a four year course of study specializing in international relations. In 1967 a visiting committee of five representatives from colleges and two from the board of education looked into the operation of the college. As a consequence of the favorable report of that committee, Royalton requested degree granting powers from the board of education. Between the time of the visitation and the meeting of the board at Royalton on April 17, 1967, the law with respect to degree granting powers was amended, so that the corporation was organized and in effect under one law, and its later operations governed by a different law.

In its meeting on April 18, 1967, the board voted to give Royalton degree granting privileges effective for the 1967-68 academic year. This privilege was to continue for successive academic years, provided satisfactory progress was made by the college in meeting the following seventeen conditions:

1. Securing the services of persons qualified to teach History and English.

2. A clear delineation of duties, rights and other information relating to the faculty. If possible the separation of teaching and administrative functions should be achieved.
3. Securing the services of a qualified, full-time librarian.
4. A program for the development of a book collection of 50,000 volumes within ten (10) years.
5. A program for the acquisition of back files (ten years) of the scholarly journals.
6. The present book collection should be cataloged and classified according to the Library of Congress system.
7. A standard procedure for the circulation of books should be established so the librarian may have control of the collection.
8. Plans should be made to enlarge the library building so that it will have a stack area that will provide for twenty years growth.
9. A clearly presented program of study for four years with required courses and options leading to the B.A. degree.
10. A clear statement of the grading system which would ensure a student of a transcript which would be acceptable for transfer to another undergraduate college or admission to a graduate college.
11. A statement of the requirements for graduation in terms of credit hours or number of courses.
12. A requirement of at least one year of English literature and composition for *all* students.
13. A requirement of one year of science course for all students working for the B.A. degree.
14. A requirement of one modern foreign language through the intermediate level of all students working for the B.A. degree.
15. Regularization of applications and admissions procedure.
16. Securing the services of a responsible financial officer (distinct from the other administrative officers of the College) to oversee the institution's financial and business operation.
17. The College bulletin should be rewritten immediately with special attention given to suggestions contained in the body of this report.

These conditions were agreed to by Mr. Doria, the then acting president. In July, 1967, the college filed an amendment to its articles of association reflecting the power to grant a Bachelor of Arts degree. The report of the visiting committee of 1967 and the report of the com-

missioner of education to the board both reflected high praise for the educational program of Royalton.

In the fall of 1967, on the basis of some newspaper reports, the condition of Royalton's finances began to give the board enough concern so that the college found its way onto the board's agenda. Mr. Doria was alleged to have engaged in some transfers of property between the college corporation and another corporation which he owned. These transfers were later explained on the record before the board by Mr. Doria as attempts to adjust the situation in Royalton so that all the college property would not be taken off Royalton tax rolls if the institution became non-profit, as the board and the Vermont Higher Education Council were later pressing him to do.

The concern of the board, however, led to arrangements for a new visitation by a committee from the Vermont Higher Education Council in February 1968. Once again the educational program and the physical plant of Royalton received high praise, but this time financial arrangements were strongly criticized. The college objected to the review because it appeared to outreach concern for the original conditions attached to the degree granting powers and because it came within less than a year from the grant.

To fully understand this area of disagreement, a review of the intervening statutory changes is helpful. At the time Royalton incorporated 16 V.S.A. §148 provided as follows:

§148. Certificate for corporations conferring degrees

(a) Before articles of association, or amendment thereof, of a corporation seeking authority to confer degrees are transmitted to the secretary of state, the incorporators or trustees shall petition the state board of education for a certificate approving the educational standing and financial status of such corporation. Such board shall give the petitioners and persons interested an opportunity to be heard and shall conduct such other inquiry as, in its opinion, may be necessary to make findings. Such findings shall be certified to the secretary of state.

(b) The articles of association or amendment thereof, such certificate and the organization fee shall be transmitted to the secretary of state. When such articles or amendment are recorded, such certificate of the board shall be recorded therewith. If such board does not certify that such corporation is qualified to provide instruction and is financially capable of maintaining the educational

standards necessary to warrant it in conferring such degrees, such articles or amendment shall not be recorded.

It was under these provisions that Royalton petitioned for degree granting privileges in 1967. The visiting committee came in February 1967, reported favorably, and in April 1967 the board granted the privilege. At that time, effective March 23, 1967, the provisions of 16 V.S.A. §148 had been amended generally to read:

§148. Educational institutions; degrees; name

(a) The articles of association of a corporation organized to engage in higher education must be accompanied by a certificate of the state board of education acting on the advice of the Vermont Higher Education Council. The certificate shall state that the corporation is engaged in conducting a bona fide institution of higher learning, giving instruction in arts and letters, science or the professions, or that the corporation proposes, in good faith, to engage in that field and has or will have the resources, including personnel, requisite for the conduct of an institution of higher learning.

(b) No person operating as an educational institution which proposes to offer courses of study above high school grade, which courses satisfy in whole or in part the requirements for a college or university degree, shall adopt or use any title or name commonly accepted as descriptive of collegiate or university institutions unless the institution shall be incorporated as provided in subsection (a) of this section. This subsection shall not apply to educational institutions existing on the effective date hereof.

(c) Only a corporation organized as provided in subsection (a) hereof may grant a degree of any type. No corporation shall grant a degree of any type unless authorized and certified for such purpose by the state board of education with the advice of the Vermont Higher Educational Council. This subsection shall not apply to corporations authorized by the state board of education to grant degrees on the effective date hereof.

(d) The state board of education with the advice of the Vermont Higher Education Council, shall promulgate rules and regulations providing for the certifications referred to in subsections (a) and (c) of this section.

(e) This section shall not apply to an institution of higher education operating in Vermont but chartered in another state and

accredited by the applicable regional accrediting agency recognized by the state department of education provided, however, that articles of association of the corporation are filed according to the laws of this state.—Amended 1967, No. 44, §1, eff. March 23, 1967.

It was these provisions that made the second visiting committee specifically derivative from the Vermont Higher Education Council. This Council had already promulgated the rules relating to certification referred to in subsection (d) of 16 V.S.A. §148, quoted above. In addition, apparently because it was disturbed by the adverse newspaper publicity in the fall of 1967, the board had voted on January 24, 1968, without consultation with Royalton, to require the college to inform the board prior to February 25, in connection with ten additional concerns:

1. Copies of minutes of all trustees' meetings, and a copy of by-laws as amended to date.
2. Copies of minutes of any committees appointed by the Board of Trustees.
3. Evidence of bonding of the college Treasurer, Financial Officer, Controller, and related staff.
4. A list of current annual salaries of faculty and staff.
5. A notarized statement from Anthony Doria and Teble Ab Kassaye of their financial interest in Owner's Inc.
6. An audited, verified statement, prepared by a Certified Public Accountant within the last 3 months indicating resources, liabilities, receipts and expenditures. Such statements to include the Certified Public Accountant's opinion as to the financial status of the college.
7. Copies of the college's forecasting income and expenditures for the 1967-68 year, indicating actual income and expenditures to January 1, 1968.
8. A forecast of income and expenditures for the next two college years.
9. The college's definition of who constitutes a student, how many students are currently enrolled, their names and the courses that they are taking.
10. The college's definition of who constitutes a member of the faculty, how many members comprise the faculty at present, their names, and the courses that they offer.

The attorney general's office, acting as legal advisor for the state board, gave preliminary advice to the visiting committee with respect to the scope and direction of its review. We quote from the relevant portions of a letter from that office to the chairman of the visiting committee:

> In making your evaluation the committee should understand that the only regulations presently in effect are those adopted by the State Board of Education on March 28, 1967. The recommendations of the Vermont Council formulated on February 8, 1968, have not been adopted by the board and hence are not operative. Accordingly your committee should be guided by the March 1967 regulations, the 17 conditions established by the Board in April of 1967, and the 10 additional requirements established by the Board in January 1968.
>
> The March 1967 regulations establish as one criteria for approval that the institution be "non-profit." This requirement is of questionable legality, and was effectively waived by the Board when it gave conditional approval to Royalton in April 1967. Therefore, it should be ignored.
>
> Mr. Downs has objected to the committee's request that an interview be arranged with the Royalton selectmen. If the selectmen have information relating to the college which they believe the State Board should be aware of they should present it directly to the Board. The college should not be required to participate in supplying witnesses or information not within its control. Accordingly I have agreed with Mr. Downs, that the college need not arrange an interview between the Committee and the selectmen. However, I think it desirable that the selectmen be told that they may present any information they may have directly to the board.
>
> The Commissioner feels that the emphasis of the current evaluation should be to determine the progress of the College in meeting the 17 requirements the Board established for it in April. The 10 supplementary items established in January should not be regarded as the initiation of an "investigation" into the college, but rather as requirements designed to determine whether the college has made satisfactory progress in meeting its educational responsibilities. That is, the label "investigation" should be avoided and the visit be conducted in the spirit of an evaluation of educational progress.

Having before it the seventeen original conditions, the ten subsequent concerns, the recently adopted standards previously mentioned and the notices of the nature of its duty, the committee undertook its review. From its own record, comments and recommendations, it seems beyond dispute that the committee felt its responsibility to determine the total question of whether Royalton College, Inc., ought to be a degree granting institution. In this connection, the recommendations of the commissioner of education in transmitting the report to the board are significant:

*Recommendations*

The question before the Board on the Royalton hearing is whether the College has made satisfactory progress in meeting the seventeen (17) State Board Recommendations of April 18, 1967.

The Board requested information be supplied in ten (10) additional areas on January 24, 1968. Most of these items relate to the corporate organization and financial position of the College. The information obtained is pertinent to the library question, and to whether a responsible financial management exists at Royalton. More generally, the ten (10) information items enable the College's progress to be evaluated in light of its financial ability to operate an institution that will be able to continue in existence to carry out its purposes. However, this hearing is a review of progress and not an initial determination or a reassessment of, and bona fide status of the College. Because the Board has only advised the College that an annual review is contemplated the inquiry ought to be confined to that area.

Several items and comments in the Visiting Committee's report assume the issue is the bona fide status of the College and are either irrelevant, or based on information of doubtful validity.

The comments reported from the CPA firm of Smith, Batchelder, Rugg & Darling on page 15 of the report, the decision of the Immigration Service Hearing Examiner and the Committee's gratuitous comment that approving profit making institutions will bring unfavorable distinction to Vermont, fall in this category. These items should be ignored.

In the body of my analysis, items which were considered adverse are marked with an asterisk. They are either directly or indirectly related to the financial capacity of the College plus questions raised on procedures and planning for the future.

Undoubtedly, if the College were able to increase the number of paying students or be guaranteed a substantial amount of capital the deficiencies noted could be quickly corrected.

A related problem is the corporate structure of Royalton College. As presently operated there is no collective decision making powers centralized in a Board of Trustees. This situation, coupled with the fact noted in III, 5, that Mr. Doria has freely transferred assets from Royalton College to Owners' Inc., in the past does suggest a possibility that educational resources may be diverted to other purposes. If Royalton College were operated on a profit making basis, but with a greater degree of control of financial operations vested in the Board of Trustees, this adverse aspect could be removed. Alternatively, if the College were incorporated as a non-profit institution, no assets of the College could be transferred except to other non-profit making institutions in the event of the demise of the corporation and, further, this form of corporate organization would help insure management by a responsible Board of Trustees.

The Committee finds the financial situation of Royalton College is precarious. The statements contained on page 16 of the report are its assessment of the facts based on the audit made by J. J. Linsalatta and Co. CPA as of February 16, 1968. The deficiencies noted in I, 3, 8; II, 8, 16; III, 6, 7, 8, all indicate the precarious financial situation of the College. This finding is rebutted by the letter dated March 27, 1968 from the accountants, which points out that the College has a net worth of $450,668.98.

The February 16, 1968 balance sheet indicates a loss from operations of approximately $77,000. Actual current assets in the form of cash were only $10,000. Some $28,000 listed as accounts receivable from students have not been received. The College does, however, have a substantial investment in non-current assets in the form of real estate. Whether these assets can be converted to current needs would seem to be an important issue.

Frequent mention is made in the Visiting Committee's report of the President's asserted ability to meet his financial obligations through "injections" of funds. Apparently real estate assets were not considered as available for current needs. The past history of the College substantiates that funds have in fact been made available. Nevertheless, if the College intends to rely on this method

of finance, there is no present indication of any guaranteed source of such gifts nor does there appear to be any assurance that a student enrolled at present is guaranteed that the College will be functioning four years later. These points should be clarified at the hearing.

Without having the benefit of assessing all the evidence at the hearing, the findings of the Visiting Committee appear to me to justify the recommendations of the Higher Education Counsel that degree granting privileges at Royalton College be suspended.

However, it is possible that the College can produce convincing evidence that the three (3) main defects noted by the Committee can be remedied within a short time. 1) The Corporate organization of the College could be srengthened by incorporation as a non-profit institution; 2) Fixed assets of the College could be used to meet current needs, which would, 3) allow for satisfactory development of the library. On this evidence, degree granting privileges could be continued subject to review to determine that promises made are promptly kept.

■ It must be acknowledged, however, that the report of the visiting committee or the recommendations of the Vermont Higher Education Council are not necessarily the verdict of the board. However far afield the activities of the committee, they are without significance unless their improper aspects are adopted as the basis for action by the board. Furthermore, if the action of the board can be supported as within its administrative competence and of a ministerial quality it is not for review by this writ. *Davidson* v. *Whitehill,* 87 Vt. 499, 506, 89 A. 1081.

■ The certificates to be obtained from the state board of education by corporations organized to engage in higher education under 16 V.S.A. §148 are comparable to licenses in that those who would obtain them have a right to petition for them and present evidence in support of their request. This makes the function of the board of education sufficiently judicial to be responsive to a writ of *certiorari,* if the right to that writ is established. *Davidson* v. *Whitehill, supra,* 87 Vt. 499, 507, 89 A. 1081.

■ Under the doctrine of that case, the scope of review under a writ of *certiorari is* analogized to something like ordinary appellate review or writ of error. Errors of law in the proceedings

affecting the merits are for consideration. This includes evidentiary points only insofar as they may be examined to determine whether there is any competent evidence to justify the adjudication, much as in the case of a motion for a directed verdict. Discretionary rulings may be set aside only for abuse and the judgment is not reviewable on the merits. The correctional power is limited to keeping the tribunal within the limits of its jurisdiction and seeing to it that that jurisdiction is exercised with regularity. *Davidson* v. *Whitehill, supra,* 87 Vt. 499, 507-509, 89 A. 1081. Under this law, since the power exercised here is quasi-judicial, both the legal quality of the action and the sufficiency of the supporting proof are for review.

This action taken by the board in connection with Royalton was spelled out in the following motion favorably voted on at its meeting on May 29, 1968:

Because the State Board of Education in its review of the status of Royalton College finds that substantive conditions for continuing approval (stipulated in the State Board of Education's "Recommendations" of April 18, 1967, the Board's discussions with Royalton College officials on October 24, 1967 and the Board's "Requirements" dated January 24, 1968) have not been satisfactorily met—notably finance, administrative organization and library—; and

Because these inadequacies have been confirmed in the report of the Visiting Committee of the Vermont Higher Education Council and have resulted in the Counsel's recommendations that degree-granting privileges be suspended at Royalton College, the State Board of Education hereby suspends degree-granting privileges of Royalton College until evidence is furnished that the areas of dissatisfaction are removed.

The State Board of Education and the State Department of Education are available for whatever assistance they can provide.

You are advised to note in all future catalogs that degree-granting privileges have been *suspended by the State Board of Education as of August 29, 1968.*

It seems plain from the amended statute 16 V.S.A. §148, that the legislature intended to give to the board of education supervisory duties with respect to degree-granting institutions. These duties include authorization of such degree-granting privileges and its neces-

sary concomitant power of revocation of such right, plus general supervisory authority consistent with its responsibility to see to compliance with appropriately established standards, including such hearings as are implicitly necessary. *Town School District of Maidstone* v. *Dempsey,* 103 Vt. 481, 485-486, 156 A. 387. This is an appropriate delegation of legislative authority, since the arbitrary and capricious exercise of such authority will not be presumed. The provision for the adoption of rules and regulations to implement the duties of the board are sufficient *indicia* that the legislature had in mind that these powers must be reasonably exercised and the demands of procedural due process respected. We are in full accord with the holding to this effect in *Shelton College* v. *State Board of Education,* 48 N.J. 501, 517-518, 226 A.2d 612, 620-621.

■ Thus, the power of the board to revoke the degree-granting privilege is established. The remaining question is whether or not, under the facts related here, it was appropriately exercised.

Insofar as the suspension purports to be based on a failure to comply with the seventeen requirements originally attached to degree-granting privilege, the answer must be in the negative. Almost every one had been complied with, except for those in connection with the library that involved programs to be performed over a period of years. The motion of the board suggests a failure in the financial segment. Among the seventeen original conditions was a requirement that the services of a separate, responsible, financial officer be procured. A Mr. Anthony Rudtke was employed in that capacity, according to the record. The finances of the institution were not otherwise referred to at that time.

A review of the minutes of the meetings of the board in connection with Royalton makes it quite clear that some members were having second thoughts about the previous grant of degree-conferring power to the college. Beginning in October 1967, concern about the financing of the college was apparent, culminating in the ten new requirements or requests of January 1968. It was sought to relate these to the original seventeen conditions, but there is no question but they represented an area of new concern for the board. This matter was proper and appropriate for the board but it was not a part of the original conditions.

■ Administrative regulation in any field, to be supportable, must conform to the essentials of due process. As is said in *Petition*

*of New England Tel & Tel. Co.*, 120 Vt. ·181, at 182, 136 A.2d 357, at 362, by now Chief Justice Holden, the quasi-judicial actions must "faithfully observe the 'rudiments of fair play'." In this case this was not accomplished by attempting to justify suspension of the degree-granting authority under one or more of the seventeen conditions accepted by the institution, when the facts demonstrate it to be a new and large concern only remotely related to the issues raised by the original conditions.

 The question then becomes, could the board revoke the degree-granting power for insufficiencies in this area. This, of course, is answered in the affirmative. The overall supervisory responsibility given the board by the legislature must be held to encompass so fundamental a qualification.

Undoubtedly the board recognizes the very real difference between revoking degree-granting powers once conferred, and withholding them in the first instance. Insistence on high standards of admission to degree-granting privileges are undoubtedly wise and beneficial, and may well insure high quality education in a new school. But uncertainty of status in a degree-granting institution, with the possibility of year to year fluctuation in its authority to award degrees, may make its educational and financial stability impossible. Reliance on the continuing authority to grant degrees may have been determinative in bringing about improvements and additions to faculty, plant and financial resources. Concern for the welfare of potential enrollees ought not to outrun consideration of the interests of the existing student body who may have relied on the degree-granting power of the school, once given. To this end all assistance and guidance possible to aid institution in retaining its ability to function should be undertaken. In this case the college solicited such help from the board without response, and its offer to become a non-profit institution went unanswered. The board, having invited corrective action, should undertake to prevent, as far as it can, such action from wastefully going astray.

 More important, from the standpoint of the reviewing function of this Court, the interjection of the board into the organizational concerns of a college, although warranted by its authority, must fulfill the requirements of the "fair play" standards of due process. Since the financial concern in this case was, essentially, a new condition, it was incumbent upon the board to raise it as such, and introduce it in the Royalton proceedings on that basis. The revocation of

degree-granting power of the college on grounds not previously conditional ought to be based on a determination that, insofar as circumstances previously acceptable are concerned, some detrimental change of sufficient magnitude to justify such action had taken place. So, if the board presumed to act on a short-coming in the area of financial adequacy, it was thus bound to demonstrate that the relevant circumstances had changed for the worse, that the change was critical enough to require suspension of the degree-granting power, and, further, to allow Royalton an opportunity to meet the issue as a new condition.

Although the authority to do this existed in the board, the factual justification was not demonstrated, and more important, the situation was not noticed to the college as a new proceeding leading to suspension of degree-granting powers based on these financial concerns. Instead, this situation, not previously conditional, was shaped into a violation of the original seventeen conditions. In effect, the board attempted to reverse itself on a financial picture it had, to all intents and purposes, previously accepted, on the insupportable claim that it was within the conditional grant of degree-conferring power.

It may be that the board's concern is well founded and can be confirmed in later proceedings. But this record leaves the essentials of their assumed basis for action undemonstrated and the ground for their proceeding inadequately stated and improperly noticed.

*Petition sustained, issuance of the writ ordered, and the order suspending the degree-granting power of Royalton College, Inc., is vacated. Let the judgment be certified to the State Board of Education, for such further action as may be warranted, consistent with the views expressed in the opinion.*

*Note:* **Mr. Justice Smith** sat on this case, but, due to illness, took no part in the decision. **Chief Justice Holden** did not sit.